ADDISON, APPELLEE, *v.* ADDISON, APPELLANT.

(No. 7741—Decided June 29, 1953.)

*Mr. Fred W. Murphy* and *Mr. Arthur C. Fricke,* for appellee.

*Messrs. Cowell & Flechter,* for appellant.

MATTHEWS, P. J.   On April 11, 1952, a decree was entered in this cause granting a divorce to the defendant on her cross-petition.   In this decree there was a finding that there was due the plaintiff $225, accrued and unpaid, on an award of temporary alimony and attorney's fees theretofore made.   This was subsequently paid.   The decree continues as follows:

"It is, therefore, ordered, adjudged and decreed that the marriage relation heretofore existing between the parties be, and the same is, hereby dissolved, and both parties are released from the obligation of same; and judgment is hereby rendered in favor of the defendant, Lucy Addison, and against the plaintiff, Shelby Addison, for the sum of three thousand, two hundred and twenty-five dollars ($3,225), for which amount execution is hereby awarded to the defendant; and the defendant is awarded the furniture formerly in the possession of both parties but now in the possession of the plaintiff; and the plaintiff is ordered to pay the costs of this proceeding, taxed at ......."

On October 22, 1952, the defendant filed a motion for execution against the person of the plaintiff, supported by an affidavit charging that the plaintiff had removed or was about to remove his property out of the jurisdiction of the court with intent to prevent the collection of this judgment; that he had property which he concealed with like intent; that he was disposing of his property and converting it into money with similar intent; and that he had fraudulently contracted the debt upon which the judgment was rendered.   On this affidavit, an execution was issued against the person of the plaintiff under which he was arrested and committed to jail.

On September 5, 1952, the plaintiff moved to vacate the proceedings under which he had been arrested, and on March 11, 1953, the proceedings were vacated on the sole ground that the plaintiff had not been accorded a hearing before his commitment.

On March 24, 1953, the motion for arrest was heard and overruled. This appeal is from the order setting aside the original order and the order overruling the defendant's motion for arrest.

At the hearing on March 24, 1953, the plaintiff, *inter alia,* defended on the ground that he had been discharged in bankruptcy and asserted that his discharge was a complete bar to the enforcement of this judgment, or, at least, that as the defendant in this action had entered her appearance in the bankruptcy proceeding and filed objections to the plaintiff's discharge, she was estopped to question its effectiveness.

Some discussion was had at the bar as to whether this judgment for $3,000 was an award of alimony, enforceable by proceedings in contempt. We think it clear that that is not its character.

In the annotation to *Holloway* v. *Holloway* (130 Ohio St., 214, 198 N. E., 579), in 154 A. L. R., 439, there is found at page 443 *et seq.*, a thorough review of the cases dealing with the enforceability by contempt proceedings of the various provisions incorporated in divorce and alimony decrees. At page 468, *ibid.*, it is stated that:

"While that general question is not within the scope of this annotation, it can be said that the more generally prevailing rule is that decrees requiring compliance with a property settlement are not enforceable by contempt proceedings, at least in so far as they call for the making of payments which are not deemed to be alimony or support."

At page 475, *ibid.*, it is said:

"The fact that the court's award, made pursuant to or in accordance with the parties' agreement, includes both alimony and a property settlement (or a settlement in lieu of dower, or other obligation not enforceable by contempt proceedings) commingled in such a way that it does not appear, from the provisions of the decree, what amount of the award is alimony and what amount property settlement (or other obligation), has been deemed to preclude the enforcement of such award by contempt proceedings."

In *Traylor* v. *Traylor,* 46 Ohio App., 87, 187 N. E., 722, it was decided, as stated in the third paragraph of the syllabus:

"Where husband was granted divorce for wife's aggression, his failure to pay taxes and assessments on realty as directed was not failure to pay 'alimony,' for which he could be committed as for contempt."

We think it clear that the plaintiff's arrest cannot be supported as a proceeding to enforce an alimony decree as for contempt. Indeed, that is not the form of this proceeding.

This is, rather, a proceeding under Section 11744 *et seq.,* General Code, for the arrest and imprisonment of the plaintiff on grounds prescribed by Section 11745, General Code, until he pays the judgment, or is otherwise legally discharged.

The plaintiff asserts that he has been legally discharged and in proof thereof produced his discharge in bankruptcy, dated October 24, 1952. It was stipulated that the defendant had been listed as a creditor and had filed objections to plaintiff's discharge in the bankruptcy proceeding, and that such objections had been overruled.

That the obligation created by this judgment is a mere debt enforceable by execution, and not an award of alimony, is made clear by what we have already said.

The only ground suggested for avoiding the effect of the discharge in bankruptcy is that the debt was fraudulently contracted. That was one of the grounds assigned in the affidavit in support of an execution against the person of the plaintiff. While the other grounds, if proven, would justify an execution against the person, not one of them would furnish a basis for excepting this judgment from the bar of the discharge in bankruptcy.

We fail to find any evidence of fraud in the creation of this debt. The record shows that the plaintiff and defendant had joint bank deposits and that plaintiff had the right to withdraw the entire deposits, which right he exercised. No matter what his motive may have been, his exercise of that right can not be classed as a fraud. It is true that the trial court recited in its findings that by reason of the plaintiff withdrawing the money from the bank without the defendant's knowledge or consent, he thereby became a trustee. There was no finding of a pre-existing trust relationship. Whatever trust existed arose out of the wrongful act of withdrawal.

In 6 American Jurisprudence, 1018, Section 796, it is said:

''The term 'fiduciary capacity' relates to technical or express trusts, and not to those trusts which the law implies from a contract or the position of parties to a transaction. The term indicates a fiduciary relation existing previously to, and independently of, the particular transaction out of which the debt arises, the words 'while acting' being significant for that construction. In order that the debt be considered as having been created in a fiduciary capacity, the bankrupt must have been a fiduciary before the wrong and without reference thereto. It is not enough for the operation of the exception that by the very act of

wrongdoing out of which the debt arose, the bankrupt has become chargeable as a trustee ex maleficio.''

This action was instituted on October 4, 1951. The divorce decree was entered on April 11, 1952. The execution against the person of the plaintiff was issued on May 15, 1952, and the return of the sheriff on June 20, 1952, shows that the plaintiff was in his custody at that time.

There is no doubt that the plaintiff had $6,000 at the time this action was commenced. However, there is no finding that he had any part of it at the time the divorce decree was entered. Therefore, there was no trust *res* of which the plaintiff could be charged as the holder of the legal title in trust for the benefit of the defendant, and the court, therefore, rendered a personal judgment only in her favor. The plaintiff testified that after this action was instituted and before the decree was entered, he dissipated all his assets in various ways, principally by gambling, so that at the hearing of the orders appealed from he had nothing. In some respects he is corroborated, but in most respects his testimony is unsupported.

In 8 Corpus Juris Secundum, 1541, Section 578 b, on the subject of fraud avoiding the operation of a discharge in bankruptcy it is stated:

''To constitute a debt created by fraud such as is contemplated by the exception here under discussion, actual fraud must be present, constructive fraud alone being insufficient.

''A claim created by contract between the parties cannot be said to have been created by fraud. The fraud must have entered into the creation of the claim, not into its settlement.''

The trial court found that the defendant had failed to prove that the plaintiff was secreting assets. The burden was upon the defendant to prove a ground for

issuance of the writ against the plaintiff's person, and, after reading this record carefully, we are unable to say the court erred in its conclusion that there was a failure of proof.

We are of the opinion also that the discharge in bankruptcy was an effective bar to any proceeding for the enforcement of this judgment. If so, secreting assets would create no duty owing to the defendant.

In 8 Corpus Juris Secundum, 1586, 1587, Section 586 b, it is said:

"Accordingly, one seeking to avoid the operation of the discharge for the reason that the claim was of such a nature as to come within the exception specified by the act must prove facts bringing the claim within such exception, the bankrupt not being required to show that the claim or debt was provable in bankruptcy and not within any of the classes excepted from the operation of the discharge."

This burden, the defendant also failed to sustain.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

Ross and HILDEBRANT, JJ., concur.