SASLOW, APPELLANT, *v.* SASLOW, APPELLEE.

158 

(No. 2406—Decided March 15, 1957.)

*Messrs. Jacobson, Durst, Pollak & Jacobson,* for appellant.
*Messrs. Pickrel, Schaeffer & Ebeling,* for appellee.

WISEMAN, J. This is an appeal on questions of law from a judgment of the Common Pleas Court, Division of Domestic Relations, Montgomery County, wherein plaintiff, appellant herein, was found guilty of contempt of court, and was ordered confined in the county jail until such time as she purged herself of such contempt.

The record shows that on November 21, 1952, appellant was granted a divorce by reason of the aggression of the husband, the defendant, appellee herein, and in the decree the appellant was given the custody of the two minor children of the parties, who were then thirteen and ten years of age, respectively.

By the terms of the separation agreement the appellant was given the real estate located at 256 Hadley Avenue, Dayton, Ohio, the title to which was already in her name, free from any claims of the husband, "in full payment of permanent alimony." The separation agreement provided for support of the children. There was no reservation of jurisdiction in the decree.

The principal question presented on this appeal involves Item 15 of the separation agreement, which provides as follows:

"Said wife agrees not to marry for a period of three years, however, if she does, then she shall execute a warranty deed to a trustee for a one-third interest in the real estate to each of the two children for their use and benefit; in the event she does not marry after the expiration of the three-year period, she shall have full control of said real estate."

Obviously, the real estate referred to is the Hadley Avenue property. The record shows further that on February 26, 1954, the appellant, then unmarried, sold and conveyed the Hadley Avenue property to a third person and, on the same day, reinvested the proceeds of the sale in another residential property on Le Fevre Drive, taking the title in her name; that the properties are of comparable value; that on October 28, 1954, within the three-year period, appellant remarried. On June 7, 1955, the appellee instituted this proceeding against the appellant in the divorce case by filing a motion in which the above facts are alleged, and the further fact that appellant refuses to convey to a trustee the children's interest in either the Hadley Avenue or the Le Fevre Drive properties. Evidence was presented on the motion which resulted in a finding that appellant was guilty of contempt. The appellant was required to show cause why she should not be punished for contempt, or in the alternative to purge herself of such contempt. Subsequently, the case came on for hearing, at which time the court found appellant to be still in contempt, and ordered her confined in the county jail until such time as she purged herself of such contempt by executing a deed to a trustee for the children's interest in the Le Fevre Drive property. From that order this appeal was taken.

Appellant contends that Item 15 was a restraint against marriage and, therefore, void; that the court had no jurisdiction to punish for contempt for failure to execute said deed. Appellee contends that the court did not exhaust its jurisdiction in the divorce action; that the court's jurisdiction was continuing; that in equity the court may follow the res and impress a trust on the Le Fevre Drive property, for the benefit of the children.

Is the 15th item in the separation agreement void on the ground that it is a restraint against marriage? The agreement provides: "Said wife agrees not to marry for a period of three years, however, if she does, then she shall execute a warranty deed," etc.

This provision is phrased as a restraint on the right of the appellant to remarry. The general rule is that a contract which is a general restraint against marriage is against public policy and void. Counsel have not briefed this question. There is a

dearth of authorities in Ohio. Through independent research the court found *King* v. *King, Exr.,* 63 Ohio St., 363, 59 N. E., 111, which applied the general rule and held that a general restraint against marriage was against public policy and void, but permitted the plaintiff to recover for personal services on the ground that the consideration was divisible and that the promise to pay for personal services was supported by a valuable consideration. In the instant case a different situation is presented. We find no case in Ohio touching the precise question presented here. This subject is treated in 35 American Jurisprudence, beginning at page 346; and in 122 A. L. R., beginning at page 7. The question more frequently arises in regard to wills or deeds, but the same considerations of public policy which operate to invalidate conditions in restraint of marriage in wills or deeds apply where the restraint is imposed by contract. 35 American Jurisprudence, 355, Section 252.

What is the legal effect of the incorporation of the separation agreement in the decree? It has been held that in approving and adopting the separation agreement, and in attaching it to the decree and making it a part thereof, as in the instant case, the court made the separation agreement a part of the decree, and the provisions of the separation agreement became a part of the order of the court. *Holloway* v. *Holloway,* 130 Ohio St., 214, 216, 198 N. E., 579, 154 A. L. R., 439. On page 216 the court said:

"There is nothing in the law to render a decree invalid or ineffectual merely because it is predicated upon an agreement of separation, which agreement is incorporated bodily in the decree. A decree which incorporates an agreement is a decree of court nevertheless, and as soon as incorporated into the decree the separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforcible as such."

And at page 217 the court said:

"It is true that a mere contract to pay alimony can not be enforced by contempt proceedings. But, as we stated above, in the instant case it is not the contract which is sought to be enforced, but the decree of court. Consequently, the inquiry is not whether the alimony obligor has paid the amounts provided

for in the contract but whether he has paid the amounts ordered by decree of court. The husband's obligation to pay rests upon the decree."

However, we look to the agreement to determine whether any portion thereof was invalid. The decree would not validate an otherwise invalid provision. If the provision against remarriage was invalid, it did not become valid by being incorporated in the decree. We must first determine the validity or invalidity of this provision on the basis of contractual relations and obligations.

From the review of the case law in other jurisdictions in 35 American Jurisprudence and 122 A. L. R., *supra*, we extract certain general principles. There is a want of harmony in the decisions of the courts of the several jurisdictions, not because of any ambiguity in the rule itself, but for the reason that the application of the rule to each particular case is submitted to the sound discretion and judgment of the court. There have been engrafted upon the general rule numerous refinements and subtle distinctions respecting partial and absolute restraints, real and personal estate, conditions precedent and conditions subsequent, gifts with or without valid limitations over, partial or total forfeiture of estate, etc. In the case at bar, the restraint is for a limited period, with a condition subsequent and only a partial forfeiture of estate. Where the restraint is not total or general, but is merely temporary, or otherwise limited in effect, then the condition may or may not be void, depending upon whether the restraint is found to be reasonable or otherwise. 35 American Jurisprudence, 355, Section 252. An unreasonable restraint of marriage is void, although it is for a limited period. 35 American Jurisprudence, 358, Section 256. Reference is made to the annotations in 49 L. R. A. (N. S.), 633. Likewise a provision in restraint of marriage, otherwise invalid, is not rendered valid by the fact that marriage results in only a partial forfeiture of the interest taken. 35 American Jurisprudence, 359, Section 257. While the true test of the validity of a restraint on marriage should be whether it is reasonable in view of all the circumstances and the relation of the parties, irrespective of whether it is partial or total, the test of reasonableness is generally applied only where the restraint is par-

tial, and the desired result is reached where the restraint is total by creating a system of exceptions. 35 American Jurisprudence, 357, Section 256; 2 Restatement of the Law of Contracts, 1090, Section 581. So where the restraint is not general, but is merely partial or temporary, or otherwise limited in effect, as in the case at bar, then the condition may or may not be void, depending on whether it is considered reasonable or unreasonable. The court is required to determine the question of reasonableness not on the terms of the conditions alone, but on the relation of the parties, and the purpose for which the restraint was imposed. 35 American Jurisprudence, 357, Section 256. In applying the test of reasonableness the court would be required to consider the fact that appellant was given the custody of the children, their tender age, the time limitation on the restraint, and the partial forfeiture of interest in the event of remarriage. Upon the facts, this court would be inclined to find the conditions to be reasonable and valid.

There is a well-recognized exception to the general rule. The restraint in the instant case is against a second marriage, in which case the general rule with all its rigidity is not applied. The same public policy does not exist against a restraint on a second marriage as against the first. 35 American Jurisprudence, 363, Section 262; 122 A. L. R., 33 (cases cited). Notwithstanding criticism, this exception to the general rule has continued to be recognized down to the present day, and the exception seems to rest upon a logical foundation. In such case the donor does not ordinarily impose the restraint out of caprice, but for the purpose of providing support while it is needed, or of safeguarding the interest of the children. A husband may be willing to leave control of his property to his divorced wife, as the best means of keeping the children together, and of providing for their support and education, and yet very reasonably may be unwilling to entrust her with the same power after she has remarried and a stranger has become the head of the household. Although the exception is criticized as being arbitrary and of an artificial character, it operates to save from the general rule against restraints a group of cases in which the restraint is ordinarily a reasonable one. The exceptions to the general rule have been applied in Ohio and elsewhere to

testamentary dispositions. 41 Ohio Jurisprudence, 844, Section 720. While we find no reported opinion in Ohio on the subject, there seems to be no logical reason why this exception should not be applied to contracts. Following the analogy of decisions as to the validity of testamentary provisions in restraint of second marriages, it has been held in other jurisdictions that a contract in restraint of a second marriage is valid. 35 American Jurisprudence, 364, Section 262; 17 Corpus Juris Secundum, 615, Section 233. Thus, upon the application of either theory, the test of reasonableness under the general rule, or the exception to the general rule respecting second marriages, we conclude that the restraint on appellant's second marriage as provided in Item 15 of the separation agreement was valid. Furthermore, we conclude that the three-year period began to run on the date of the decree of divorce.

Did the court have jurisdiction to make the order? The order of the court from which the appeal was taken is based on her refusal to transfer to the children their interest in the Le Fevre Drive property. We question whether such refusal can be made the basis for a contempt charge, inasmuch as neither the separation agreement nor the decree required the appellant to perform any act respecting this property. The separation agreement and decree had application only to the Hadley Avenue property. Neither was there any attempt made to modify the decree.

Appellee contends that the interest of the children was to be held in trust, and that we have under consideration a trust in equity, and therefore the court should apply equitable principles; that a court of equity may follow the res, and in the instant case the court should impress a trust on the Le Fevre Drive property for the benefit of the children, citing in support of this proposition the case of *Ellis* v. *Ellis,* 94 Ohio App., 339, 115 N. E. (2d), 180. In the cited case a motion was filed which the appellate court stated possessed the attributes of a petition for specific performance, in which proceeding the relief sought was in the nature of a declaratory judgment. Having found the proceeding to be equitable in nature, the court applied equitable principles. The proceedings here are unlike the proceedings in the *Ellis case.* This proceeding is in a court of law and

not a court of equity. *Marleau* v. *Marleau,* 95 Ohio St., 162, 115 N. E., 1009; *Durham* v. *Durham,* 104 Ohio St., 7, 135 N. E., 280; 18 Ohio Jurisprudence (2d), 6, Section 89. A court of law may not follow the res and impress a trust. This proceeding started, and still remains, a proceeding in contempt and has no attributes of an equitable proceeding. It is interesting to note that in the *Ellis case* a contempt proceeding was filed against the husband for his failure to complete a contract to purchase a piece of property from the wife, which grew out of a separation agreement. The lower court held the husband in contempt, but the judgment was reversed on appeal. Later the motion was filed which laid the basis for the opinion cited.

Appellee contends that the lower court was in the exercise of a continuing jurisdiction and in holding appellant for contempt the court was enforcing its former order. As heretofore stated, the court made no order in the decree respecting the Le Fevre Drive property, and the court did not hold appellant in contempt with respect to the Hadley Avenue property, which is mentioned in the decree.

Appellee, in urging the question of continuing jurisdiction, refers to the authority of the court respecting alimony awards. It is well established that, subject to certain exceptions, the court exercises a continuing jurisdiction in alimony cases. 18 Ohio Jurisprudence (2d), 77, Section 142. The payment of alimony may be enforced by contempt proceedings. 18 Ohio Jurisprudence (2d), 65, Section 135. In the instant case, the divorce was granted to the wife by reason of the aggression of the husband. Consequently the wife, the appellant herein, was awarded alimony, if any, under Sections 8003-17 and 8003-19, General Code. *Quaere,* is the giving to the wife of real estate which she already owned, an award of alimony? Obviously the interest which the husband, the appellee herein, has in Item 15 of the separation agreement can not be said to be alimony. The husband was not awarded alimony. Item 15 is in the nature of a property settlement. This is not a proceeding to enforce the payment of alimony.

The factual development presents a question similar to the one presented in *Traylor* v. *Traylor,* 46 Ohio App., 87, 187 N.

E., 722, decided by the Second District Court of Appeals in 1933. In that case the husband was granted a divorce by reason of the aggression of the wife. The court approved and entered as a part of the record a separation agreement in which the husband had agreed to make payments on the mortgage indebtedness on a piece of real estate, to pay the taxes and assessments thereon, which he failed to do. The wife instituted proceedings in contempt against the husband to require him to make the payments as agreed. The lower court found him guilty of contempt; the Court of Appeals reversed the judgment in contempt and held that while the court may punish for contempt for the non-payment of alimony, the particular proceeding was not instituted for that purpose. On page 92 the court said:

"Under the facts disclosed by this record we are of the opinion that the payments referred to do not constitute alimony, the nonpayment of which would form the basis of an action for contempt.

"The defendant in error is not without a remedy, but we are of opinion that she is not entitled to the remedy which she has pursued."

In that case the wife was the aggressor, and in the instant case the husband was the aggressor. In our opinion the determination of the issue presented here does not depend on which party was the aggressor. The rationale of the opinion in the *Traylor case* is that since the proceeding was not instituted for the purpose of enforcement of an alimony award, a contempt proceeding was not the proper remedy. We approve of the logic and conclusion reached in that case, and believe that the factual situation in the case at bar requires the application of the same principle of law. We find no inconsistency between the opinions in the *Holloway* and the *Traylor cases,* as implied in the footnote in 18 Ohio Jurisprudence (2d), 68.

The *Traylor case* was cited with approval in *Addison* v. *Addison*, 95 Ohio App., 191, 194, 118 N. E. (2d), 225. In the annotations to *Holloway* v. *Holloway, supra* (130 Ohio St., 214), reported in 154 A. L. R., 439, beginning at page 443, there appears an extensive review of the cases on the subject of the

enforceability by contempt proceedings of provisions in a separation agreement which had been incorported in the decree. At page 468 the rule is stated as follows:

"While that general question is not within the scope of this annotation, it can be said that the more generally prevailing rule is that decrees requiring compliance with *a property settlement are not enforceable by contempt proceedings,* at least in so far as they call for the making of payments which are not deemed to be alimony or support." (Emphasis ours.)

See, also, *Goggans* v. *Osborn,* 237 F. (2d), 186 (U. S. C. A. 9th Cir., Oct. 5, 1956). The above quoted rule of law and its application to the facts in the instant case has not been altered by the amendment to Section 8003-21, General Code (now Section 3105.20, Revised Code) effective August 28, 1951, by adding to this section the following:

"In any matter concerning domestic relations, the Court of Common Pleas shall not be deemed to be deprived of its full equity powers and jurisdiction."

This provision did not confer additional jurisdiction on the court; neither did it enlarge on the jurisdiction already conferred. Before the court may exercise the equity powers under the cited section, the court must have acquired jurisdiction of the proceeding.

However, if by any process of reasoning it may be held that Item 15 involves alimony, under the facts in this case, the court exhausted its jurisdiction in awarding alimony in gross which was executed, and without reservation of jurisdiction in the decree. *Petersine* v. *Thomas,* 28 Ohio St., 596, 599; *Garver* v. *Garver, Sr.,* 102 Ohio St., 443, 445, 133 N. E., 551; *Clough* v. *Long,* 8 Ohio App., 420, 425.

In the instant case the court had not acquired jurisdiction in the contempt proceeding. We are of the opinion that the lower court was not authorized to render the judgment which it did, and therefore the same is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

HORNBECK, P. J., and CRAWFORD, J., concur.