HOGAN, APPELLANT, *v.* HOGAN ET AL., APPELLEES.

[Cite as Hogan v. Hogan (1972), 29 Ohio App. 2d 69.]

(No. 30508—Decided January 27, 1972.)

*Messrs. Hertz, Kates, Friedman & Feldman,* for appellant.

*Messrs. Terrell, Williams & Salim,* for appellees.

### I.

JACKSON, J. This appeal was brought from a decision of the Court of Common Pleas denying a motion by the plaintiff, appellant herein, that her former husband be cited for contempt for his alleged failure to comply with the terms of a separation agreement incorporated into and made a part of a decree of that court divorcing these two parties. Her former husband, appellee herein, answered by asserting, *inter alia,* that the terms of the separation agree-

ment claimed to have not been complied with are in the form of a property settlement. So finding, the trial court dismissed plaintiff's motion, on the authority of *Saslow* v. *Saslow* (1957), 104 Ohio App. 157, and *Krasnicki* v. *Krasnicki*, an unreported case decided by this court (No. 29129, decided November 13, 1968).

## II.

Although provisions found in a separation agreement, as incorporated into a divorce decree and made a part thereof, may happen to have the attributes of a property settlement between the parties, we do not believe that they are thereby rendered unenforceable by proceedings to punish as for a contempt under R. C. 2705.02. To require a trial court to distinguish between those terms which may be in the nature of a property settlement and terms which relate to maintenance and support of the spouse or children, enforcing only the latter, would be arbitrary and artificial and would run counter to the settled law of this state. We do not, therefore, reach the question most strongly argued by the parties, whether or not the particular terms included here are provisions effecting a property settlement between the parties. We hold that it makes no difference whether they are or are not.

The bald proposition that provisions of a separation agreement, once incorporated into and made a part of an otherwise valid divorce decree, cannot be enforced by proceedings for contempt, could only be supported on one or the other of two theories: (1) that by adopting such provisions as its own the trial court exceeds its authority, entering, as it were, an invalid order or decree, or (2) that enforcement would constitute an imprisonment for debt, contrary to the Constitutions of the United States and of the state of Ohio. The latter theory is disposed of by the cases of *State, on Complaint of Cook,* v. *Cook* (1902), 66 Ohio St. 566 and *Holloway* v. *Holloway* (1935), 130 Ohio St. 214. Of course, no person can be punished for contempt due to his failure to pay according to a valid judicial order, if he is unable financially to comply with that order. And as the *Cook* and *Holloway* cases make clear, in no event is

the contemnor punished for his failure to pay a debt arising out of a contract.

When all or a part of a separation agreement is incorporated into and made a part of a divorce decree, albeit by reference, that act of incorporation does not "reduce the status of the decree to that of a mere contract" but raises the included language to a greater status, giving it the force and effect it would have enjoyed had it been fully rewritten into the order or decree. "[T]he inquiry is not whether the alimony obligor has paid the amounts provided for in the contract," as the Supreme Court has noted in such a case, "but whether he had paid the amounts ordered by a decree of court" (*Holloway* v. *Holloway*, 130 Ohio St. at 216-17).

The contemnor is punished for his willful failure to comply with a valid judicial order. In such a case power of contempt is not dependent upon the presence or absence of continuing jurisdiction over the subject matter and parties to the original divorce action. It springs separately, from the act or omission in defiance of the court and from the actual arrest, if no more, of the contemnor. The presence or absence of jurisdiction is not a basis, therefore, for an abstract distinction between punishment for refusal to make payments for maintenance and support and punishment for refusal to make payments to effect a property settlement, in each case on order by the court. In either event, defiance of a valid judicial order should be equally enforceable by proceedings to punish as for a contempt, subject in each case to the same defenses.

By way of defense, it may be shown in an appropriate case that the act or omission complained of was not willfully inspired, or that the accused did in fact comply with the mandate of the court, or that in entering the decree sought to be enforced the court exceeded its authority. But, in general, the trial court in a divorce case has broad equitable jurisdiction to effect "a complete dissolution of the marriage relationship, including a determination of the rights of the parties to alimony and to a division of property" (*Clark* v. *Clark* [1956], 165 Ohio St. 457).

Indeed, where the decree incorporates by reference provisions found in a separation agreement, the trial court is not limited to those powers which it might possess in the absence of such an agreement. It is limited only by the restriction that the decree and the included provisions taken from the separation agreement, taken as a whole, must not be unreasonable (*Robrock* v. *Robrock* [1958], 167 Ohio St. 479).

In the *Robrock* case the Supreme Court held that proceedings will lie in contempt to enforce provisions of a separation agreement (incorporated into and made a part of the divorce decree) imposing obligations on the husband *vis a vis* his children extending beyond their minority. Recognizing that one part of a separation agreement may have been the *quid pro quo* for another and that in a particular case several provisions of such an agreement may be quite inseparable, Judge Bell wrote:

"A trial court, even though satisfied in every respect as to the fairness of an agreement, in considering the incorporation of that agreement in a divorce decree, should not be required to separate items in the agreement that the court has the present power to enforce from those it does not have the power to enforce and include in the decree only the former. Nor should such court be required to find itself in the position of saying to a wife, 'Now, of course, the obligations you assume, being such as I have the power to impose, will be enforced against you, but this court will not be able to enforce the obligations your husband is here assuming because I do not have the power to impose them'" (*Robrock* v. *Robrock, id.*, at 487).

That, however, is just what the appellee would have us do.

Unlike *Robrock*, in the case at bar there is no argument that the court actually lacked power to bind the parties—only that it lacked power to impose obligations enforceable by proceedings as for a contempt. Presumably appellant could in any event reduce the obligations to judgment and thereupon proceed in aid of execution. Put this way, the question is whether litigation is to be at an end,

whether a valid decree is to be enforced according to its tenor, or whether appellant is to be again forced through a possibly long and involved litigation, as though that seemingly valid decree had never issued, for reasons equally as arbitrary as led the Supreme Court to reach the decision it did in *Robrock*. It is axiomatic that the purpose of a decree is to put an end to litigation. It is certainly not intended to stir up legal difficulties. To pose the problem this way, is to answer the question.

Appellee points to the case of *Saslow* v. *Saslow* (1957), 104 Ohio App. 157, which he claims supports his position. That case involved a provision in a separation agreement incorporated into a subsequent divorce decree allowing the wife to retain title to certain real property subject to the restriction that should she remarry within three years from the date the divorce decree was entered, she would deliver two deeds to a trustee, conveying in each a one-third interest in the property, to be held for the benefit of her two children by her marriage to the complainant. The wife subsequently sold this property, and reinvested the proceeds in a second parcel of land of comparable value. Thereafter, but within the three-year period, she remarried. Proceedings were brought against her for contempt upon her refusal to convey any interest in either of the parcels, in accord with the terms of the decree. The trial court found her to be in contempt. The Court of Appeals reversed.

Strictly speaking, there was no order effecting the wife's interest in the second parcel. There was no evidence that the sale and purchase arrangement was in any way intended to defeat that order which had been made directing the wife to convey one-third interest in the first parcel. But while Judge Wiseman did touch on these considerations in his opinion, it is not unreasonable to conclude from that opinion and from the syllabus that the court based its decision in part on the general proposition found in the American Law Reports and quoted by Judge Wiseman as a general ''rule of law'' to the effect

''that decrees requiring compliance with *a property*

74

*settlement are not enforceable by contempt proceedings,* at least insofar as they call for the making of payments which are not deemed to be alimony or support." (Annotation, 154 A. L. R. 439, 443, *cited at* 104 Ohio App. 157, 166—emphasis added by the court.)

As additional authority, Judge Wiseman referred to the *Holloway* case, discussed briefly the "equity clause" of R. C. 3105.20 and cited *Traylor* v. *Traylor* (1933), 46 Ohio App. 87 and *Addison* v. *Addison* (1953), 95 Ohio App. 191.

Whether or not it could be argued that the court in *Saslow* should have held that the separation agreement provision in question was intended to assure the support of the minor children (who were the intended beneficiaries of the one-third interests) and was not intended to effect a settlement of the marital property *per se,* we do not agree that the so-called "rule of law" taken from the American Law Reports correctly states the law of Ohio. To the extent that Judge Wiseman's discussion of R. C. 3105.20 was meant to buttress his reliance on the statement excerpted from the A. L. R. Annotation, his construction of that statute is in direct conflict with the decision in *Clark* of which he was apparently unaware or at least did not cite.[1]

---

[1]Referring to R. C. 3105.20, Judge Wiseman wrote:

"This provision did not confer additional jurisdiction on the court; neither did it enlarge on the jurisdiction already conferred." *Saslow* v. *Saslow* (1957), 104 Ohio App. 157, 166.

Writing less than one year earlier, in *Clark* v. *Clark* (1956), 165 Ohio St. 457, 458, Chief Justice Weygandt observed:

"It is the contention of the defendant that this amendment of 1951 is without effect and that the jurisdiction of the trial courts in divorce and alimony actions remains unchanged.

"With this view this court can not agree. When the General Assembly amends a statute, it is to be presumed that that legislation is not mere meaningless wordage. * * * Apparently the salutary purpose of the General Assembly was to authorize the trial courts to exercise full equity powers and jurisdiction in adjudicating a complete dissolution of the marriage relationship, including a determination of the rights of the parties to alimony and to a division of property."

Although it does rely on the *Traylor* case, the *Addison* decision has very little bearing on the question at issue, since the substantial question in that case was whether or not a property settlement providing for a lump sum monetary settlement was discharged by a discharge in bankruptcy.

Insofar as the *Traylor* case is authority supporting the "rule of law" proclaimed by the A. L. R. Annotation, cited by Judge Wiseman in *Saslow,* and urged by the appellees in the case at bar, it seems to have been based in turn on the statement found in 9 Ohio Jurisprudence 99, Contempt, Section 53 (1930), which reads as follows:

"Under the Ohio statutes alimony may be granted either the wife or the husband made payable either in gross or installments. But it is not consistent with Ohio legislation upon the subject of divorce and alimony, judgments and orders, to enforce the payment of a judgment for money, in gross, by a contempt proceeding. Proceedings in aid of execution are the proper remedy * * *."

Were this the law, it would follow that in some cases maintenance and support awards could not be enforced, but it would not follow that they would be unenforceable in every case, *e. g.,* gross awards. That, however, is not the law. It is but a badly misstated rule taken from a Common Pleas decision (*Hart* v. *Hart* (Cuyahoga County, 1894), 1 N. P. 56).

That decision might properly be called the genesis for the "Saslow" rule. But the trial judge in *Hart* later distinguished that case in *Myers* v. *Myers* (Cuyahoga County, 1896), 3 N. P. 162. And the correct rule based on the facts in these two cases has been explained and summarized by Judge Keefe in *Peters* v. *Peters* (1962), 115 Ohio App. 443 as drawing a distinction based on

"whether an alimony award is an ordinary judgment pursuable exclusively through proceedings in aid of execution, or whether such an award is a direct command by the court to the defendant to pay, noncompliance there-

with being punishable as for contempt." *Peters* v. *Peters,* *id.,* at 447.[2]

Appellees are apparently under the impression that we applied the *Saslow* rule in the case of *Krasnicki* v. *Krasnicki,* No. 29129, an unreported case decided in this court on November 13, 1968. The principal question raised there was whether an alimony award terminated upon the remarriage of the wife. In such a case it was necessary and reasonable to distinguish between payments for support and awards intended to settle the parties' interests in the marital property, *Dailey* v. *Dailey* (1960), 171 Ohio St. 133.

As a secondary issue it was argued by counsel in *Krasnicki* that if the "alimony" was in the nature of a property settlement, a proceeding to punish for contempt would not lie under the decision in *Saslow.* This court agreed with the trial court that the "alimony" in question was in substance a property settlement. But it made no comment on the *Saslow* case, reversing instead because "*under the state of the pleadings,* the [trial] court could not enter judgment nor find the appellant in contempt" (emphasis added). Nor did this court hold that contempt will not lie to

---

[2]The decree of the divorce court in the case at bar clearly ordered these parties to perform all acts directed by the terms of the separation agreement, stating therein that:

"*The court* finds that the parties have, prior to the conclusion of this hearing, entered into a separation agreement which is fair, just and equitable, and *orders that said agreement* a copy of which is attached hereto and for identification purposes marked exhibit A, *be incorporated herein* as if fully rewritten *and its terms ordered into execution.*" (Emphasis added.)

While some parts of the decree and of the incorporated agreement may simply settle rights of the parties *vis a vis each other,* where the agreement expressly provides that one party *shall* perform a specified act, the mandate of this language in the decree is a clear order to comply. For an able discussion and further illustration of this distinction, compare *Plummer* v. *Superior Court* (1942), 20 Cal. 2d 158, 124 P. 2d 5, *Lazar* v. *Superior Court* (1940), 16 Cal. 2d 617, 107 P. 2d 249, and *Miller* v. *Superior Court* (1937), 9 Cal. 2d 733, 72 P. 2d 868. We are not required, in the current posture of the case at bar, to decide the precise questions presented in the *Peters* case.

enforce property settlement provisions when, in *State* v. *Oppal* (1947), 49 Ohio Law Abs. 492, it reversed the judgment of the Court of Common Pleas holding a defendant in contempt for her failure to comply with the provisions of a divorce decree by refusing to transfer certain property to her husband and to make specified payments to him. The decision was based on the refusal of the trial court to permit the defendant *to show that payments had been made* and an agreement reached with her former husband settling the claim. It was also based on defects in the judgment in the divorce case. Yet in both *Oppal* and *Krasnicki*, if their silence implies anything, the court seems to have tacitly assumed that contempt would lie in an otherwise proper case.

We are not, therefore, bound by these two cases. Neither are we bound by the decisions of our sister Courts of Appeals, although they are entitled to due consideration and respect. We are bound by the decisions of our Supreme Court.

The general principles announced by the Supreme Court of Ohio in the *Cook* and *Holloway* cases, coupled with the Supreme Court's decisions in *Clark* and *Robrock*, require that we hold as we do. However, the *Cook* (1902) and *Holloway* (1935) cases have a uniqueness *based on their own facts*. This is true because both cases involved awards of "alimony" under a statutory term carrying a particular meaning at that time. As the Supreme Court noted in *Durham* v. *Durham* (1922), 104 Ohio St. 7 under the then prevailing statutes, "the Legislature * * * used the term [alimony] in a more extensive sense than defined by the lexicographers or the courts" (*id.* at page 10). Statutory alimony awarded in an action for divorce (as distinguished from alimony awarded on a petition for alimony only, as illustrated by the *Durham* case):

"comprehend[ed] a division of property accumulated by the joint efforts of the husband and wife during their domestic partnership, as well as an allowance for separate maintenance and support in the nature of a pension."

(14 Ohio Jurisprudence, Divorce and Separation, Section 69, p. 459 (1930).)

Although *Holloway* involved an award of "alimony" in the form of periodic payments "for [the wife's] own support" (*Holloway* v. *Holloway* (1935), 130 Ohio St. at 214), its principles were equally applicable to any other award of statutory alimony. In this respect, *Holloway* was simply an extension of the court's decision in *Cook,* and *Cook,* after all, had involved an order for the payment of a specified lump sum of money, due in equal installments (*The State, on complaint of Cook,* v. *Cook* (1902), 66 Ohio St 566, 567). Such an award was probably meant to effect a property settlement—as Judge Spear evidently concluded. Discussing the statutory provisions for alimony, he observed that, in part:

"* * * the provision for alimony is an allowance. It is in the nature of a partition. Recognizing the right of the wife to participate in the accumulations which are presumably the result of [the parties'] * * * joint efforts and joint economies, and having in mind at the same time any property which may have come to the husband by the marriage, the law wisely awards the wife a just and equitable proportion of the whole * * *." (*Cook, id.* at 573.)

*Holloway* was certified to the Supreme Court because the Court of Appeals for Crawford County believed its decision, ultimately affirmed by the higher court, was in conflict with the decision of the Court of Appeals for Franklin County in *Traylor* v. *Traylor* (*Holloway, supra,* at 215). To the extent the two cases were in conflict, *Holloway* and not *Traylor* must be taken as correctly stating the law in Ohio. If the editor of the American Law Reports cited *Traylor* in an annotation to *Holloway* and if the court in *Saslow* could "find no inconsistency between the opinions in the *Holloway* and *Traylor* cases * * *." (*Saslow* v. *Saslow,* 104 Ohio App., at 165), this was so in both cases because it was not realized that in this state at the time *Holloway* and *Cook* were decided the term "alimony" had a special statutory definition. That definition included

in its terms an award intended to effect a settlement of the respective parties' interest in the marital property. When the Supreme Court held in these two cases (especially on the facts in *Cook,* an order for payment of a lump sum in equal installments) that an "alimony" award could be enforced by proceedings to punish for contempt, it was ruling that an order contained in such award, based upon a separation agreement incorporated by reference (*Holloway*), was enforceable in contempt even though the provisions of the agreement enforced had effected a settlement of the marital property.

The judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

DAY, C. J., and MANOS, J., concur.