CITY OF CLEVELAND, Appellee,

v.

STEPHENS, Appellant.

[Cite as *Cleveland v. Stephens* (1994), 93 Ohio App.3d 827.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64099.

Decided May 23, 1994.

828

*Barbara J. Danforth,* Chief Prosecutor, and *Lisa M. Herbert,* Assistant Prosecutor, for appellee.

*Richard F. Smith,* for appellant.

HARPER, Judge.

Defendant-appellant, Joshua Stephens, appeals from his conviction for drug loitering following the entering of a *nolo contendere* plea in the Cleveland Municipal Court. Appellant submits that the ordinance under which he was convicted, Section 607.19 of the Cleveland Codified Ordinances, is unconstitutionally vague and overly broad. He, therefore, argues that the trial court erred in denying his motion to dismiss as the ordinance violates the Fourth Amendment to the United States Constitution. We find merit in appellant's argument, and conclude that the complaint issued by plaintiff-appellee, the city of Cleveland, should have been dismissed.

Detective Brian Heffernan testified during appellant's motion to dismiss hearing that on April 7, 1992, detectives were assigned to surveillance of the 1446 West 57th Street area due to neighborhood drug activity complaints. At approximately 5:00 p.m., appellant and several males were suspected of engaging in drug transactions. Appellant was travelling to and from a house, "a common activity for drug dealers to do on the street." Detectives warned appellant about the complaints of drug activity, and advised him to leave the area.

Later that evening, at about 8:30 p.m., detectives once again noticed appellant when he approached two vehicles, and participated in suspected drug sales. Appellant was next seen leaning into a car which was stopped in the middle of the street. The detectives approached appellant in an undercover vehicle; appellant started to run away. Appellant disappeared from the detectives' sight for several seconds, but the detectives caught up to him. A search revealed that appellant

was not in possession of any drugs, but he was nonetheless arrested for loitering and charged under Section 607.19 of the Cleveland Codified Ordinances ("C.C.O. 607.19").[1]

Appellant thereafter filed a motion to dismiss the charge based upon the alleged unconstitutionality of the ordinance. The trial court overruled the motion after hearing oral argument, leading to appellant's plea of no contest. Appellant was subsequently sentenced to a term of imprisonment of one hundred eighty days. This appeal followed, with appellant raising as his sole assignment of error the trial court's denial of his motion to dismiss.

In both *Cleveland v. Snow* (Apr. 15, 1993), Cuyahoga App. No. 61871, unreported, 1993 WL 120278, and *Cleveland v. DeBose* (Apr. 8, 1993), Cuyahoga App. No. 61870, unreported, 1993 WL 106950, this court reversed decisions of the Cleveland Municipal Court holding that C.C.O. 607.19 was unconstitutional. Specifically, we found that the defendants "failed to prove, beyond a reasonable doubt that Section 607.19 is either overbroad or vague." *DeBose.* The authorities relied upon in rendering this conclusion, however, have been recently questioned by the Supreme Court of Ohio in *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 618 N.E.2d 138. Consequently, this court must revisit the opinions previously announced in *Snow* and *DeBose* as we are obligated to follow the decisions of the Supreme Court of Ohio. See *Krause v. Krause* (1972), 31 Ohio St.2d 132, 148, 60 O.O.2d 100, 108–109, 285 N.E.2d 736, 746 (Corrigan, J., concurring); *Hogan v. Hogan* (1972), 29 Ohio App.2d 69, 77, 58 O.O.2d 80, 85, 278 N.E.2d 367, 372–373.

In *Rowland,* police officers first observed Rowland, who was a thirty-two-year-old, unemployed, African–American male, when he leaned into the window of a car stopped on Copley Road. There was a traffic signal and a small, convenience-type store located on the corner of Copley Road and Madison Avenue. Rowland entered the store when the officers advised him through a loudspeaker not to loiter in the area.

Rowland was later seen leaning into another car which was stopped on Madison Avenue. He walked to the front of the store when the officers pulled up next to the stopped vehicle. *Id.,* 67 Ohio St.3d at 376, 618 N.E.2d at 141.

The officers saw Rowland talking with a group of people in front of the store at least a couple of times throughout the evening. According to the officers, every time Rowland was aware of their surveillance, he would enter the store. Furthermore, the officers at some point discovered Rowland had a prior drug conviction.

---

1. See Appendix I for full text of C.C.O. 607.19.

Rowland started to walk away from the store at approximately 7:00 p.m. with another person. The officers pulled their vehicle up next to him, and asked him to approach the cruiser. They did so on the pretext of asking for Rowland's assistance in identifying a photograph of a suspected robber. Rowland refused to approach the car. He was standing between twenty and twenty-five feet from the cruiser and it was very dark outside. Rowland then ran away.

One officer pursued him, believing that Rowland handed something to his companion before taking flight. The officer who chased Rowland testified that it appeared Rowland threw something to the ground while running, and placed something into his mouth after he stopped. This officer caught, arrested, and searched Rowland and the area of his arrest. No drugs or drug paraphernalia were discovered in the searches. Additionally, the city did not provide any evidence of a drug-related offense at Rowland's trial.

The municipal court found Akron Codified Ordinances ("A.C.O.") 138.26 to be constitutional. It then concluded that the defendant violated the ordinance by loitering " 'in a manner and under circumstances manifesting the purpose to engage in drug-related activity[.]' " *Rowland,* 67 Ohio St.3d at 376, 618 N.E.2d at 141. The court stated that the " 'combination of all these factors [subsections (B)(1), (B)(3), (B)(5), (B)(6), and (B)(9) ] over a period of two hours after dark in the wintertime indicates something other than just standing out for sociability reasons.' " *Id.* The Summit County Court of Appeals affirmed the decision. The Supreme Court of Ohio, however, found A.C.O. 138.26 [2] to be unconstitutional. *Id.* at 389, 618 N.E.2d at 150.

The issue in the present appeal is, therefore, whether C.C.O. 607.19 is significantly different from A.C.O. 138.26 to allow it to withstand appellant's constitutional challenge. We review this issue cognizant of the fact that in both *Snow* and *DeBose* this court characterized the Akron ordinance as nearly identical to the Cleveland ordinance.

■ The majority of the Supreme Court in *Rowland* initially rejected the manner in which the Summit County Court of Appeals constructed A.C.O. 138.26, which was by adding the element of specific intent to the ordinance. The ordinance contained no requirement of specific intent on behalf of the accused; rather, it contained a prohibition against loitering "in a manner and under circumstances manifesting the purpose to engage in drug-related activity." Further, not only does the ordinance not contain "specific intent" language, but a specific intent requirement is irreconcilable with the goal of the ordinance, which is to punish offenders who act under "circumstances manifesting" a purpose to

---

2. See Appendix II for full text of A.C.O. 138.26.

commit a drug crime. Therefore, although legislative enactments should be interpreted so as to avoid serious constitutional questions, the appellate court, by adding the element into the ordinance, "rewrote it in such a way as to fundamentally change its meaning." *Id.*, 67 Ohio St.3d at 380, 618 N.E.2d at 144.

The Supreme Court, having established that the appellate court erred in its construction of A.C.O. 138.26, proceeded to analyze whether the ordinance as written was either vague or overly broad under either the federal or state Due Process Clauses. The court concluded that when the circumstances enumerated in A.C.O. 138.26(B) are used as mere examples of the "circumstances" which may manifest drug-related activity, no actual evidence of the existence of the circumstances is necessary to support an arrest or conviction. If this approach is used, the ordinance is unconstitutionally vague. *Id.* at 381, 618 N.E.2d at 144–145. On the other hand, if actual evidence of the circumstances is necessary, the ordinance is unconstitutionally overbroad. *Id.*

With regard to the former interpretation, the court found two deficiencies in the language of the ordinance. First, it failed to provide notice to citizens as to what conduct was prohibited, or it was unduly open-ended and encroached on legal or permissible conduct. For example, there was no indication that Rowland was engaged in any drug activity. Yet the arresting officers were able to look at either the enumerated circumstances in A.C.O. 138.26(B) or draw upon their experience as police offices to surmise that Rowland was acting in a way which "manifested" drug activity unbeknownst to Rowland. Finally, if the average person carefully perused the ordinance, he or she would be unable to understand what acts "manifest" illegal activity, and would not be able to distinguish between innocent and illegal activity on the street. Consequently, " '[a] citizen cannot determine its meaning so that he may regulate his conduct. There is nothing in the ordinance that would enable him to know the dividing line between innocent loitering (for example, window shopping) and criminal loitering.' " *Id.* at 383, 618 N.E.2d at 146, quoting *Seattle v. Drew* (1967), 70 Wash.2d 405, 410, 423 P.2d 522, 524, 25 A.L.R.3d 827, 833 (ruling on ordinance very similar to A.C.O. 138.26). Second, the ordinance invited arbitrary and discriminatory enforcement among minorities, and was almost exclusively enforced against African–Americans.[3] *Rowland,* 67 Ohio St.3d at 384–385, 618 N.E.2d at 146–147. The enforcement problem resulted from the ability of police officers to look at circumstances outside those enumerated in the ordinance to effectuate an arrest for loitering.

3. Rowland offered the following information, gained from statistics collected and analyzed by Professor George Galster of the College of Wooster, in support of his motion to dismiss: A.C.O. 138.26 was enforced in predominately African–American neighborhoods in the city of Akron, and those arrested under the ordinance were disproportionately African–American in light of the racial populations in the areas of the arrests.

After all, an arrest was possible even without the commission of a crime based upon suspicion alone. The ordinance thus failed to provide "an objective basis upon which to measure criminal behavior or guilt." *Id.* at 385, 618 N.E.2d at 147. These two deficiencies, the lack of objective criteria with which to measure whether a citizen is "loitering," and the consequent arbitrary enforcement allowed by this lack of criteria, resulted in an unconstitutionally vague ordinance. *Id.* at 386, 618 N.E.2d at 148.

Even when the Supreme Court considered whether requiring evidence of one or more of the circumstances set forth in A.C.O. 138.26(B) would render the ordinance constitutional, the court concluded that the ordinance remained overbroad. The court noted that at least nine of the named circumstances encroached on a " 'substantial amount of constitutionally protected conduct[,]' " *id.* at 387, 618 N.E.2d at 149, quoting *Houston v. Hill* (1987), 482 U.S. 451, 459, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398, 410, because they can easily implicate innocent behavior, or can support arrest simply because of a citizen's status, friends, neighborhood or appearance, *id.,* 67 Ohio St.3d at 387, 618 N.E.2d at 148–149. Since A.C.O. 138.26 sweeps conduct not punishable under the First and Fourteenth Amendments within its prohibitions, the ordinance is impermissibly overbroad. *Id.* at 388, 618 N.E.2d at 149–150.

A review of *Rowland* demonstrates that the Supreme Court of Ohio attempted to find that A.C.O. 138.26 was constitutional. It gave the ordinance the benefit of the doubt by interpreting it in two ways—by viewing it as an ordinance which required the introduction of specific evidence of the circumstances in section B, and by viewing it as one which did not require evidence of the circumstances exhibiting "loitering." Under either interpretation, the court found the ordinance to be unconstitutional. The court understood that loitering laws are an attempt to solve or at least curb the drug crisis; however, when balanced against the fundamental and timeless principles espoused in the Constitution, A.C.O. 138.26 did not survive the constitutional challenge. *Id.* at 389, 618 N.E.2d at 150.

Applying the foregoing to C.C.O. 607.19, this court finds that the element of specific intent is sufficiently demonstrated therein to allow the ordinance to withstand the *Rowland* court's initial criticism of A.C.O. 138.26. C.C.O. 607.19 provides, "[n]o person shall loiter * * * *for the purpose of engaging in drug-related activity* * * *." (Emphasis added.) The city of Cleveland must, therefore, offer evidence of specific intent on behalf of the accused, *i.e.,* the accused loitered "for the purpose" of engaging in prohibited conduct. In contrast to A.C.O. 138.26, the accused is afforded notice of the requisite *mens rea* which will support a violation of the law, and of the city's burden as to what it needs to show to prove the offense.

Our analysis is not complete, however, until we verify whether the circumstances enumerated in C.C.O. 607.19 pertaining to what conduct amounts to loitering for the purpose of engaging in drug-related activity suffer from the same constitutional deficiencies as A.C.O. 138.26. The Supreme Court after all did not limit its ruling of unconstitutionality to its finding that A.C.O. 138.26 did not contain a specific intent requirement. It merely expressed that the appellate court erred in implying a specific intent where there was none, and, therefore, it would review the ordinance for constitutional deficiencies as written and applied to the defendant.

The Supreme Court in *Rowland* stated with regard to the issue of what conduct constitutes loitering for the purpose of engaging in drug-related activity under A.C.O. 138.26:

"If the circumstances enumerated in A.C.O. 138.26(B) do not form a sufficient basis for an arrest or conviction, the ordinance is unconstitutionally vague because it gives neither reasonable notice to citizens of what is prohibited nor reasonable standards for those charged with its enforcement. As a result it also offends the third value protected by the void-for-vagueness doctrine: it chills or inhibits people's exercise of their constitutional rights." *Id.*, 67 Ohio St.3d at 382, 618 N.E.2d at 145.

C.C.O. 607.19 contains the words, "among the circumstances which may be considered in determining whether such loitering is for the purpose of engaging in drug-related activity." Similar language was contained in A.C.O. 138.26, and was the basis for the Supreme Court's conclusion that the ordinance failed to provide sufficient notice as to what conduct would support a charge of loitering. The court stated:

"The word 'among' indicates that there are other circumstances, not specified in the ordinance, which may be used to form the basis of an arrest and conviction. It is, of course, unlawful for a citizen to be convicted of a criminal offense not defined by a legislative enactment. We find this lack of specificity to be fatal to the ordinance. * * * " (Footnote omitted.) *Id.* at 383, 618 N.E.2d at 146.

We likewise find that the lack of specificity, *i.e.*, notice of suspected conduct, in C.C.O. 607.19 is fatal to the ordinance. Even though the ordinance contains a specific intent requirement, this requirement, *i.e.*, the purpose of engaging in drug-related activity, is explicitly connected to the "among the circumstances" language. Consequently, just because there is a specific intent requirement, the requirement can be proven by conduct not expressly contained in the ordinance. The citizens of Cleveland thus are without any guidance as to what conduct may be deemed illegal under it and, accordingly, the ordinance allows for an unduly open-ended interpretation.

Additionally, the ordinance implicates prohibition of conduct which may be innocent, just as A.C.O. 138.26 did. Specifically, a person may be suspected of loitering for the purpose of engaging in drug-related activity under the Cleveland ordinance where the person repeatedly stops, beckons to, attempts to stop passersby, or engages passersby in conversation, or stops or attempts to stop motor vehicles by hailing, waving arms, or making other bodily gestures, or acts as a "look-out," or transfers small objects or packages for currency or any other thing of value in a furtive fashion (leading a police officer to believe or ascertain a drug sale did or is about to occur), or displays the physical characteristics of drug intoxication or usage, including dilated pupils, glassy eyes, slurred speech, etc., or is identified as a member of a drug-related gang as uncovered by a law enforcement officer.

The *Rowland* court recognized that the application of similar language in A.C.O. 138.26 "reached a significant amount of protected activity." The court stated:

"Each of the eleven circumstances, with the possible exception of subsections (B)(2) and (B)(8), describes status or conduct which can be innocent and may be protected under the Constitution. Among the circumstances A.C.O. 138.26(B) states 'may be considered in determining whether such purpose is manifested' are: *the suspect looks like a drug user, including being underweight or nervous* (subsection [B][1] ); *the suspect behaves suspiciously, including hailing or stopping passing cars* ( [B][3] ); *the suspect is identified by police as a gang member* ( [B][4] ); *the suspect 'transfers small objects or packages in a furtive fashion'* ( [B][5] ) * * *.

"These circumstances, and others in the ordinance, can easily implicate a person's status, associates, mere presence, or otherwise innocent behavior. We feel that they encroach on a 'substantial amount of constitutionally protected conduct.' *Hill, supra,* 482 U.S. at 459, 107 S.Ct. at 2508, 96 L.Ed.2d at 410. * * *" (Emphasis added.) *Rowland,* 67 Ohio St.3d at 387, 618 N.E.2d at 148–149.

In line with *Rowland,* this court finds that C.C.O. 607.19(a)(1) "sweeps within the prohibitions of the ordinance many things that may not be constitutionally punished under the First and Fourteenth Amendments." *Id.* at 388, 618 N.E.2d at 150.

Notwithstanding our earlier conclusion that the Cleveland ordinance contains a specific intent requirement unlike the Akron ordinance, the remainder of the ordinance contains the same constitutional infirmities identified by the *Rowland* court. C.C.O. 607.19 is, therefore, susceptible of interpretations which are either *impermissibly vague or overbroad,* and is accordingly unconstitutional under the federal and state Due Process Clauses.

We recognize that the facts of this case are different from the facts of *Rowland* to the extent that Det. Heffernan testified that he believed appellant participated in drug sales. There was no evidence in *Rowland* that any officer believed the defendant actually participated in a drug sale. However, this distinction does not sway our opinion as both Det. Heffernan and the officer in *Rowland* could not testify beyond relating a hunch that the defendants sold drugs.

The officers in *Rowland* became suspicious of Rowland when he acted in a manner similar to appellant's herein. Rowland purportedly used the convenience-type store to conduct sales out of, lingered in the area, leaned into stopped vehicles, spoke with a gathering of people, entered the store when he knew he was being observed by officers, attempted to or successfully transferred drugs from himself to a companion, and attempted to throw away or successfully threw away the drugs. The fact that the officers in *Rowland* did not testify to an observed transaction does not mean they did not believe Rowland was in possession of drugs, and did not suspect that he was transacting drug sales. Finally, as in *Rowland,* the city of Cleveland did not offer any evidence of a drug-related offense, nor did it file a complaint against appellant for a drug-related offense.

Appellant's assignment of error is sustained.

The judgment of the Cleveland Municipal Court is reversed; the cause is remanded to that court in order for a judgment of acquittal to be entered in favor of appellant.

*Judgment reversed.*

BLACKMON, P.J., and PARRINO, J., concur.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.

## APPENDIX I

Section 607.19 of the Cleveland Codified Ordinances provides:

"607.19  Loitering for the Purpose of Engaging in Drug–Related Activity

"(a)  No person shall loiter on or about any street, in or about any place open to the public, or in or about any public or private place for the purpose of engaging in drug-related activity contrary to any of the provisions of Chapters 2925 or 4729 of the Revised Code or Chapter 607 of these Codified Ordinances.

"Among the circumstances which may be considered in determining whether such loitering is for the purpose of engaging in drug-related activity are:

"(1) Such person repeatedly stops, beckons to, attempts to stop, engages passersby in conversation or repeatedly stops or attempts to stop motor vehicles

by hailing, waving arms or making other bodily gestures, or acts as a look-out, or transfers small objects or packages for currency or any other thing of value in a furtive fashion which would lead law enforcement officers to believe or ascertain that a drug sale has or is about to occur, and such person:

"A. Is a known unlawful drug user, possessor or seller; or

"B. Displays the physical characteristics of drug intoxication or usage, including dilated pupils, glassy eyes, slurred speech, loss of coordination or motor skills, needle tracks; or

"C. Is identified by a law enforcement officer as a member of a gang or association which has as its principal purpose illegal drug activity; and

"(2) A law enforcement officer has previously given a verbal or written warning to such person to leave the area within a reasonable time prior to any arrest, within one block of the area where the arrest occurred.

"(b) For purposes of this section, a 'known unlawful drug user, possessor or seller' is a person who, within the knowledge of the arresting officer, has been convicted within five (5) years prior to the date of arrest in any court within this state of any violation involving the use, possession or sale of any of the substances referred to in Chapters 2925 or 4729 of the Revised Code or Chapter 607 of the Codified Ordinances of Cleveland, Ohio, 1976, or any substantially similar laws of any political subdivision of the state.

"(c) Whoever violates the provisions of this section is guilty of loitering for the purpose of drug-related activity, a misdemeanor of the first degree."

## APPENDIX II

Section 138.26 of the Akron Codified Ordinances provides:

"(A) No person shall loiter in or near any thoroughfare, place open to the public, or near any public or private place in a manner and under circumstances manifesting the purpose to engage in drug-related activity contrary to any of the provisions of R.C. Chapter 2925.

"(B) Among the circumstances which may be considered in determining whether such purpose is manifested are:

"(1) Such person is a known unlawful drug user, possessor, or seller. For purposes of this chapter, a 'KNOWN UNLAWFUL DRUG USER, POSSESSOR, OR SELLER' is a person who has, within the knowledge of the arresting officer, been convicted in any court within this state of any violation involving the use, possession, or sale of any controlled substance as defined in R.C. Chapter 2925, or such person has been convicted of any violation of any of the provisions of R.C. Chapter 2925 or substantially similar laws of any political subdivision of

this state or of any other state; or a person who displays physical characteristics of drug intoxication or usage, such as needle tracks, burned or calloused thumb and index fingers, underweight, or nervous and excited behavior;

"(2) Such person is currently subject to a court order prohibiting his presence in a high drug activity geographic area;

"(3) Such person behaves in such a manner as to raise a reasonable suspicion that he is about to engage in or is then engaged in an unlawful drug-related activity, including, by way of example only, such person acting as a lookout or hailing or stopping cars;

"(4) Such person is physically identified by the officer as a member of a gang or association which has as its purpose illegal drug activity;

"(5) Such person transfers small objects or packages in a furtive fashion;

"(6) Such person takes flight or manifestly endeavors to conceal himself upon the appearance of a police officer;

"(7) Such person manifestly endeavors to conceal any object which reasonably could be involved in an unlawful drug-related activity;

"(8) Such person possesses any instrument, article, or thing whose customary or primary purpose is for the sale, administration, or use of controlled subjects [*sic*, substances] such as, but not limited to, crack pipes, push wires, chore boys, hand scales, hypodermic needles, razor blades, or other cutting tools;

"(9) The area involved is by public repute known to be an area of unlawful drug use and trafficking;

"(10) The premises involved are known to the defendant to have been reported to law enforcement as a place of drug activity pursuant to R.C. Chapter 2925;

"(11) Any vehicle involved is registered to a known unlawful drug user, possessor, or seller, or a person for whom there is an outstanding warrant for a crime involving drug-related activity.

"(C) If any provision of this section is held invalid, such invalidity shall not affect any other provision, or the application thereof, which can be given effect without the invalid provision or application, and to this end the provisions of this section are declared to be severable.

"(D) Whoever violates this section is guilty of loitering for the purpose of engaging in drug-related activity, a misdemeanor of the fourth degree."