Robert L. Mason, Appellant, v. District Court of Black Hawk County et al., Appellees.

No. 39815.

February 11, 1930.

*Sullivan & Sullivan,* for appellant.

*F. W. Edwards,* for appellees.

GRIMM, J.—In November, 1915, at Waterloo, Iowa, Bessie Mason was granted a decree of divorce from the petitioner, Robert L. Mason. She was awarded the custody of their five children, then minors. The decree provided alimony of $25 per week, for the support and maintenance of the plaintiff and the children. The decree was twice modified, first in January, 1921, and again in April, 1923. On September 28, 1928, a citation was issued by Judge Wood, of the district court of Black Hawk County, Iowa, to the petitioner, to show cause why he should not be adjudged guilty of contempt of court for the failure to obey the order of April 17, 1923, concerning the payment of alimony. On October 1, 1928, the petitioner filed an application for a modification of the decree, which application was consolidated with the citation to show cause why the petitioner should not be punished for contempt. The court denied the petitioner's application for a modification of the decree, and found the petitioner guilty of contempt.

I. Limited as we are in certiorari, we will not disturb the finding of the lower court on the question of a modification of the decree of April 17, 1923.

II. It is claimed that an order of court confining a party in jail until alimony is paid, violates Article I, Section 19, of the state Constitution, because it amounts to imprisonment for debt. This question is fully reviewed and decided adversely to this contention in *Roberts v. Fuller,* 210 Iowa ——.

III. The court in its order and judgment provided that if, within five days from the date of the filing of the opinion, Mason paid into court, for the use and benefit of the plaintiff and the minor son, the sum of $250, and deposited with the clerk a bond in the penal sum of $1,000, the terms of which bond would provide security for the payment to the clerk, for the use and benefit of the plaintiff and minor son, on the 1st and 15th of each month, of the sum of $25, the order of commitment to the county jail for contempt of court should be withheld for such times as the bond above referred to remained in force and

effect and such payments were made. The petitioner indulges in an extensive argument against the power of the court to make an order requiring the posting of a bond. We do not decide any question raised upon this part of the order, for the reason, among others, that manifestly it was a mere option or election given to the petitioner, which the petitioner did not accept, and for that reason, if for none other, the whole matter is now moot.

IV. A part of the court's finding is as follows:

"It is, therefore, the finding of this court that the defendant has willfully and premeditatedly failed to obey the orders of this court in relation to the payment of alimony, and that the defendant is in contempt of the orders of  this court. It is, therefore, the order of this court that the defendant be confined in the county jail of Black Hawk County until such time as he complies with the order of the court made by the Honorable E. B. Stiles, and that he be so confined until such back payments of alimony are paid into the hands of the clerk of this court."

This court said, in *State ex rel. Hammond v. Hamilton*, 200 Iowa 343:

"The judgment of the lower court does not, in such cases, possess, in full measure, all the attributes of the verdict of a jury. *Nies v. Anderson*, supra [179 Iowa 326]; *Schraeder v. Sears*, supra [192 Iowa 604]; *Arcuro v. Utterback* (Iowa), 195 N. W. 734 (not officially reported). But, on the other hand, the case is not triable here *de novo*; and the findings of the trial court are entitled to weight in our consideration of the questions of fact presented by the record, especially where the testimony is conflicting, and much depends upon the credibility of the witnesses. *Cheadle v. Roberts*, 150 Iowa 639; *Dutton v. Anderson*, 163 Iowa 613; *Nies v. Anderson*, supra; *Rist v. District Court*, 162 Iowa 244; *Sawyer v. Hutchinson*, 149 Iowa 93; *McNiel v. Horan*, 153 Iowa 630; *Arcuro v. Utterback*, supra."

In *Andreano v. Utterback*, 202 Iowa 570, the holdings of this court in reference to the force and effect of the finding

of the lower court and the practice in certiorari are collected and reviewed, and the following rule announced:

"Clearly, the finding of the court that a contempt has been committed is not conclusive on review, and, if it appears from all the facts, as shown by the return, that the act charged and found does not constitute a contempt, the writ issued by this court will be sustained. The findings and decision of the lower court should not be 'lightly reversed,' but the guilt of the accused must be shown by clear and satisfactory evidence. This makes it unnecessary to state the governing rule by way of comparison to a jury verdict. The search is to find the evidence to sustain the act charged, and it is for this court to say, having due regard for the findings of the lower court, but without viewing the findings as conclusive, whether or not the facts in any case before us clearly and satisfactorily establish and constitute the contempt."

See, also, *St. George's Society v. Sawyer*, 204 Iowa 103, in which, in a certiorari proceeding, this court said:

"The findings made by the respondent court are not conclusive on review, but it is for this court to say, having due regard for the findings of the lower court, whether the facts clearly and satisfactorily establish and constitute the contempt."

The only witnesses before the court on behalf of the complainant were Bessie Mason, the plaintiff in the divorce proceedings, and Robert Mason, a son, then 15 years of age. On  behalf of the defendant, the only evidence was that of Robert L. Mason, the petitioner. At the time of the hearing in October, 1928, two of the children were still at home with Mrs. Mason. The daughter Helen was then 19 years of age, and Robert 15. The daughter, prior to that time, had occupied a clerical position in Ottumwa, and at the time of the hearing, was employed in Waterloo. The son Robert was attending high school, but worked in the summer time.

The record discloses that the complainant has been compelled to work, a portion of the time, and has at other times

been handicapped by illness. She and the youngest son were, at the time of the hearing, living in very poor quarters, deprived of most luxuries, and some of what many people would regard as necessities. There had been a failure on the part of the petitioner to make all the payments of alimony as specified in the decree. This had been going on, to a greater or less extent, for years. At different times, stipulations had been entered into, whereby the amount specified in the decree was reduced, but even these reduced payments were not regularly paid.

On the other hand, the testimony disclosed that, at the time the original divorce was granted, the petitioner had no property and no money. In fact, he had no well defined trade or occupation. He had been, prior to the divorce, engaged in a more or less unstable advertising business. It appears without contradiction that, at times, before the divorce, petitioner was so unsuccessful that some of the family furniture had to be sacrificed. Moreover, there is neither charge nor proof of any kind that, either before or after the divorce, petitioner's failure to produce was the result of either bad habits or shiftlessness.

The petitioner married again, about a year after the divorce. The present wife had, at the time of the marriage, and still has, some property. The record shows, on the part of the petitioner, a more or less unfortunate career of failure. He has been engaged in various enterprises, having to do more or less with advertising and circularizing, but the net profits have been very meager. A portion of the time, the petitioner has worked for his wife, on a salary. While not thus engaged, he has been much of the time away from home, canvassing, and conducting advertising schemes. Part of the time, he had one of the boys with him, engaged in this advertising work, but they were unsuccessful. The petitioner related at great length what he had been doing, and the results thereof. He testified several times that he had paid every dollar he could pay on alimony.

There is no evidence in the record even tending to show that the petitioner has had or now has any property, or even any money. True, he has had small amounts, from time to time, a substantial portion, if not all, of which he has sent in payment of alimony. The petitioner does not even own an

automobile, new or secondhand, and is not shown to have expended money for any luxuries. On the record, he appears to be just another unsuccessful man. The record does not show that he has deliberately and willfully violated the orders of the court in relation to the payment of alimony.

V. This case has previously been before this court. *Mason v. District Court,* 227 N. W. 517. On the former hearing, the submission was set aside. At that time, as the record appeared, the trial court in his findings referred to a telephone conversation between the petitioner and respondent, but the record contained no further evidence of said conversation. This court said:

"It does not appear in the abstract whether the facts personally known to the trial judge were made of record. This would be essential to a proper review of the case, and essential likewise to the validity of the order of commitment."

On January 13, 1930, the appellees filed in this court what is denominated an additional abstract of the record, which contains a statement to the effect that, on January 9, 1930, the learned trial judge filed in the office of the clerk of Black Hawk County, Iowa, a statement, to be considered as filed October 5, 1928, in which the court said, in substance, that, when the petitioner was arrested on citation, and while he was still in the county jail, the petitioner called the respondent judge on the telephone, and asked to be permitted to give to the sheriff a check, in lieu of bail of $500; that the respondent judge asked the defendant if he had money in the bank, and the petitioner said that he and his wife had the money in the bank; that, upon further questioning, the petitioner said that the money was in his wife's name, and that he, the petitioner, had been drawing checks upon it, by arrangement with his wife, and that it was all right for him to issue the check in question,—that the account contained twice the amount of the $500 bond.

The only evidence in this record on the subject appears in cross-examination, when the petitioner was asked whether he had told Judge Wood that he (petitioner) had authority to check on this account in his wife's name, and he emphatically

denied that he had so stated, and further testified that he couldn't give a check upon that account without permission from his wife. He further testified, in answer to a question whether he had told the court he had authority to draw on the account, as follows:

"No, sir, I didn't say that. I telephoned for her authority. She wasn't home, and the bank told me that they wouldn't accept a check signed by me unless it was 'O.K.'d' by her."

It will be noted that the record made on the hearing contains no evidence whatever that the petitioner had advised Judge Wood over the telephone to the effect that the petitioner and his wife had money in the bank, or that he, the petitioner, had authority to draw on that account. What the trial court secretly knew did not become a part of the record. Section 12548, Code, 1927; *Crosby v. Clock,* 208 Iowa 472; *Sergio v. Utterback,* 202 Iowa 713; *Storie v. District Court,* 204 Iowa 847.

Section 11265 of the Code of 1927 provides as follows:

"The judge of the court is a competent witness for either party, and may be sworn upon the trial. In such case it is in his discretion to order the trial to be postponed or suspended, and to take place before another judge."

Moreover, it matters not how much money or property the petitioner's wife may have. The fact that she has, as the record shows, issued some of the checks which have been used in the payment of alimony, is not material. The question here is whether the petitioner is able to pay, and if able to pay, whether he has willfully and deliberately refused to obey the orders of the court in the matter of payment of alimony. As was said in *Peel v. Peel,* 50 Iowa 521:

"Misfortune, mistake, inability arising from disease of mind or body, or from poverty, if shown as the reason of nonpayment, would surely have purged defendant from contempt."

The petitioner has never been successful. However, so far as the record shows, he has been diligent and hard-working. A careful examination of the entire record leads to the conclusion that it fails to show a proper basis for the contempt order made by the learned trial judge. It follows that the writ must be,

and is, sustained, and the petitioner is discharged from the contempt order.—*Writ sustained.*

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.