L. R. HARDING, Petitioner, v. W. A. McCullough, Judge, Respondent.

No. 46631.

July 27, 1945.

Lee R. Harding, of Clinton, pro se.

M. L. Sutton, of Clinton, for respondent.

GARFIELD, J.— We refer to petitioner as plaintiff and to respondent as defendant.

Plaintiff is a practicing attorney of long experience in the city of Clinton. Defendant is judge of the municipal court of that city. The principal facts in connection with plaintiff's conviction for contempt, upon which he was fined $50, are these:

Plaintiff was attorney for one Jaworski, who was charged with maintaining a nuisance in violation of section 12395, Code, 1939. Preliminary hearing was held before defendant, at the conclusion of which Jaworski was held to answer the charge. Defendant first announced that Jaworski would be at liberty upon his own bond. However, the city attorney and the assistant county attorney objected to this and defendant thereupon required a bond of $500 with surety. Plaintiff procured the signature of one Green as surety to a blank form of bond. The form of surety's affidavit in justification on the bond was not filled out nor signed by Green. (See Code section 13620.) Plaintiff signed the notary's jurat but his seal was not affixed.

Because the clerk of the municipal court was at home seriously sick, plaintiff asked defendant to come to the clerk's office to approve Green's bond. Defendant came to the clerk's office but refused to approve the bond. Thereupon plaintiff told defendant twice, "You have some ulterior motive for not wanting to approve this bond." Defendant's verified statement of the facts upon which his order is founded (see Code section 12548) states that plaintiff was very mad, shook his finger in defendant's face and shouted the ulterior-motive charge in a loud voice; following a question by defendant, plaintiff continued to shake his finger in defendant's face and again shouted the ulterior-motive charge in an angry tone; plaintiff's demeanor was "insulting, insolent, discourteous and insinuating." Plaintiff's "written explanation of his conduct under oath" (see Code section 12546) asserts that "this description of the incident is incorrect and untrue" but admits he charged defendant with an ulterior motive in not approving the bond and

states "the only meaning this expression could have at that time was that he had some other reason in mind for not wanting to approve the bond."

Defendant's statement of the facts above referred to contains the following, which is not denied in plaintiff's written explanation:

"L. R. Harding had been guilty of practically this same conduct and had made practically the same accusations to the court during the course of argument on a motion of Stowe vs. Breen [230 Iowa 1215, 300 N. W. 518] some time ago. The court warned Mr. Harding at that time that if he continued his attitude toward the court that he would be punished for contempt."

Code section 12550 provides that no appeal lies from an order to punish for contempt but that it may be reviewed by certiorari. We have held in cases of this kind that the judgment under review does not possess in full measure all the attributes of a jury verdict; the findings below, though not conclusive, are entitled to weight in our consideration of the fact questions presented by the record, especially where the testimony is conflicting. It is for this court to say, having due regard for the findings below, whether the contempt has been clearly and satisfactorily shown. Mason v. District Court, 209 Iowa 774, 776, 777, 229 N. W. 168, and cases cited; Roach v. Oliver, 215 Iowa 800, 803, 244 N. W. 899; Eicher v. Tinley, 221 Iowa 293, 296, 264 N. W. 591.

We have held that while the power to punish for contempt is inherent in courts of record, such power is regulated by statute, which limits its operation to the acts therein specified. Haines v. District Court, 199 Iowa 476, 479, 480, 202 N. W. 268; Barber v. Brennan, 140 Iowa 678, 686, 119 N. W. 142; Drady v. District Court, 126 Iowa 345, 349, 351, 102 N. W. 115. See, also, Ex parte Robinson, 19 Wall. (86 U. S.) 505, 510, 22 L. Ed. 205, 208. However, the statute, Code sections 12541, 12542, probably includes every type of situation in which, without statute, the court would resort to the summary remedy of contempt. Drady v. District Court, supra, 126 Iowa 345, 352, 102 N. W. 115;

Dunham v. State, 6 (Clarke) Iowa 245, 257, 258; note 20 Iowa L. Rev. 121, 123.

Among the acts which constitute contempt is, "Contemptuous or insolent behavior toward such court while engaged in the discharge of a judicial duty which may tend to impair the respect due to its authority." (Section 12541, paragraph 1.) We think it sufficiently appears that plaintiff was guilty of such behavior.

As stated, it is admitted that plaintiff charged defendant with an ulterior motive in refusing to approve the bond. Webster's New International Dictionary defines "ulterior" as "beyond what is manifest or avowed"; Century Dictionary, as "beyond what is seen or avowed, intentionally kept concealed." From these definitions it is apparent plaintiff charged that defendant acted with some secret or hidden motive. Plaintiff's accusation was an obvious reflection upon the motive which actuated defendant's refusal to approve the bond—an intimation that defendant did not act from proper motives. It was in the nature of a rebuke to defendant which implied misconduct on his part.

That plaintiff's behavior tended to diminish the respect properly due the authority of the court as an institution seems to us apparent. We are not here concerned with the respect that may be due defendant as an individual. As frequently pointed out in cases of this kind, and as our statute (section 10920) provides, it is the first duty of an attorney to maintain the respect due to courts. A breach of such duty is a contempt. 12 Am. Jur. 396, section 11.

Even an erroneous ruling or order of a court that has jurisdiction to act does not justify contemptuous conduct of an attorney. Russell v. French, 67 Iowa 102, 104, 24 N. W. 741; Nebraska Children's Home Soc. v. State, 57 Neb. 765, 78 N. W. 267, 269; note Ann. Cas. 1915D, 1048, 1056. We may observe, however, that so far as the record shows, defendant was clearly right in refusing to approve this bond. It was not properly executed. Green did not qualify as surety and there was no showing that he had sufficient nonexempt property to entitle him to qualify.

It is unnecessary to determine just what weight we will give to defendant's statement that plaintiff spoke in a loud and angry voice and that his demeanor was insulting and insolent, or to resolve any conflict in this regard between defendant's statement of the facts and plaintiff's written explanation of his conduct. It is quite apparent from the record, however, that plaintiff was considerably vexed at defendant's refusal to permit Jaworski to be at liberty on his own bond, and defendant's description of what occurred is by no means improbable.

In support of our conclusion that plaintiff's behavior was contemptuous, see Russell v. French, supra, 67 Iowa 102, 24 N. W. 741; Rubin v. State, 192 Wis. 1, 211 N. W. 926; In re Chartz, 29 Nev. 110, 85 P. 352, 5 L. R. A., N. S., 916, 124 Am. St. Rep. 915, and cases cited; annotation 5 L. R. A., N. S., 916.

Pertinent here is this language from Rubin v. State, supra, 192 Wis. 1, 9, 211 N. W. 926, 929:

"However, when the court rules upon questions before it, it is the duty of counsel to respectfully acquiesce in such rulings. He owes no duty to his client which will justify him in indulging in * * * contemptuous comment upon such rulings. This practice on the part of attorneys is most reprehensible, and brings disrepute upon the institution which it is their sworn duty to respect."

▮▮▮ In our opinion defendant at the time in question was "engaged in the discharge of a judicial duty," within the meaning of section 12541. In Field v. Thornell, 106 Iowa 7, 11, 12, 75 N. W. 685, 68 Am. St. Rep. 281, we considered the meaning of the quoted words and held, in effect, they are entitled to a broad and liberal interpretation; that these words do not limit contemptuous behavior to the time the court is actually in session nor to acts committed in its presence. (Here the court was in session and the act was in its presence.) In the Field case we said, at page 12 of 106 Iowa, page 687 of 75 N. W., 68 Am. St. Rep. 281:

"But the judicial duty is not performed until the particular case is disposed of. The purpose of the statute is that during the pendency of specific legal proceedings the court shall be

permitted to administer the law according to approved rules. and precedents, without molestation or interference.''

The term ''judicial duty'' is frequently defined as a duty vested in the judicial department; a duty which legitimately pertains to an officer in the judicial department. 34 C. J. 1182; Black's Law Dictionary, Third Ed., 1032. In Hutchins v. City of Des Moines, 176 Iowa 189, 205, 157 N. W. 881, we quoted with approval from In re Application of Cooper, 22 N. Y. 67, 82, ''Whatever emanates from a judge as such, or proceeds from a court of justice, is, according to these authorities, judicial.''

Clearly defendant had the power to act in the matter of approving the bond. See Code sections 13611, 13621–13624, 10656. Such approval involved not only a determination that the bond was complete and regular on its face but also that Green had nonexempt property of sufficient value to qualify as surety. Apparently defendant refused to approve the bond not merely because it was incomplete and irregular on its face but principally because Green was not possessed of sufficient property. This determination involved the exercise of judgment and discretion.

As a rule, when a judge has power to make some order or issue some writ, his act in doing so is judicial, within the law of contempt. Annotation 117 Am. St. Rep. 950, 956, 957. See, also, as sustaining our conclusion that defendant was engaged in a judicial duty, Sauskelonis v. Herting, 89 Conn. 298, 94 A. 368, 369, where it is held that granting bail and fixing its amount is a judicial function.

It is no defense that the incident occurred in the clerk's office rather than in the courtroom. As stated parenthetically, the court was in session. See Code section 10663. A contempt committed in any place set apart for the use of any constituent part of the court, including its officers, while in session and engaged in discharging the business of the court according to law, is deemed to have been in the presence of the court. Ex parte Savin, 131 U. S. 267, 277, 9 S. Ct. 699, 33 L. Ed. 150, 153; 17 C. J. S. 36, section 26; 12 Am. Jur. 392, section 5; Dangel on Contempt 96, section 199; note Ann. Cas. 1915D, 1048, 1049. See Dunham v. State, supra, 6 (Clarke) Iowa 245, 255.

■ Plaintiff contends he was entitled to be tried on the charge of contempt, with the right to examine and cross-examine witnesses and other usual incidents of a trial. The law as applied to such a contempt as we have here is settled to the contrary. This was a direct and not a constructive contempt, committed in the actual presence of the court, and of which defendant had personal knowledge. The municipal court is a court of record. Code section 10654. The right of courts of record to punish summarily such a contempt, without issue or trial, has long been recognized. Jones v. Mould, 151 Iowa 599, 605, 132 N. W. 45; Ex parte Terry, 128 U. S. 289, 9 S. Ct. 77, 32 L. Ed. 405, 410; 17 C. J. S. 71, 74, section 62a; 12 Am. Jur. 429, 430, section 61; note Ann. Cas. 1915D, 1048, 1052.

Our statute (section 12546) provides that the offender "may, at his option, make a written explanation of his conduct under oath * * *." We have held that one charged with even a direct contempt, where the court acts upon personal knowledge, must be accorded the opportunity to make such explanation. State ex rel. Arthaud v. District Court, 124 Iowa 187, 189, 99 N. W. 712; Russell v. French, supra, 67 Iowa 102, 105, 24 N. W. 741. Plaintiff was given reasonable opportunity to make written explanation of his conduct and filed such a writing.

Our statute (section 12548) also directs that if the court or judge acts upon personal knowledge, a statement of the facts upon which the order is founded must be made and preserved. Defendant carefully complied with this requirement.

Since compliance was had with sections 12546 and 12548, plaintiff was entitled to nothing further in the way of a hearing or trial, the proceedings were entirely regular, and plaintiff was accorded due process of law. State v. Baker, 222 Iowa 903, 905, 270 N. W. 359, and cases cited; Rubin v. State, supra, 192 Wis. 1, 211 N. W. 926, 930, 931.

Our decision is in no way inconsistent with such cases as Haines v. District Court, supra, 199 Iowa 476, 202 N. W. 268; State v. Anderson, 40 Iowa 207, and Dunham v. State, supra, 6 (Clarke) Iowa 245, which recognize the right of attorneys and other citizens to criticize the final outcome of a matter in litigation. That principle is not applicable here. The matter

of the approval of the bond was pending before the court at the time in question. *That* matter had not been disposed of. As we understand the record, after defendant's refusal to approve the Green bond, another bond was furnished with another surety which was approved by defendant.

Upon a consideration of all contentions made, the judgment below is affirmed and the writ of certiorari annulled.—Writ annulled.

MILLER, C. J., and BLISS, OLIVER, HALE, WENNERSTRUM, SMITH, and MULRONEY, JJ., concur.