Harris, Appellee, *v.* Harris, Appellant.

(No. 78-1151—Decided June 13, 1979.)

304

*Mr. Homer B. Gall, Jr.,* and *Mr. William R. Walker,* for appellee.

*Mr. Donovan Lowe,* for appellant.

HOLMES, J. The sole issue before this court is whether a property settlement provision contained in a separation

agreement, which is subsequently incorporated into a decree of dissolution, is enforceable by contempt proceedings. Appellant presents a two-pronged argument: first, that property settlement provisions, contrary to "alimony" provisions, may not be enforced by contempt proceedings; and, second, that to enforce the property settlement provision would constitute imprisonment for debt contrary to the Ohio Constitution.

In *Traylor* v. *Traylor* (Franklin Co. 1933), 46 Ohio App. 87, the husband had been granted a divorce for the "aggression of the wife." The parties had agreed to a property settlement which required the husband to pay the indebtedness on the mortgages on certain real property given to the wife, and to pay the tax and street assessments levied thereon. The agreement was incorporated into the divorce decree.

When the husband defaulted on his obligations, the wife instituted contempt proceedings. The trial court subsequently ordered his imprisonment in the event of his failure to make such payments. On appeal, the Court of Appeals for Franklin County reversed and remanded on the basis that the rights of the wife, where, as in that case, the divorce is granted to the husband based upon the aggression of the wife, were controlled by G. C. 11993. The court, at page 90, stated that under such circumstance "* * * the court is merely authorized to adjudge to the wife such share of the husband's real or personal property, or both, as it deems just."

The court pointed out further that there was no question of the right of a court to commit for contempt for failure to pay "alimony proper," but in that the mortgage payments to be made by the husband on behalf of the aggressor wife could not, under the statute, constitute alimony, contempt for nonpayment would not lie.

*Traylor, supra,* was followed in *Addison* v. *Addison* (Hamilton Co. 1953), .95 Ohio App. 191 (dictum); and *Saslow* v. *Saslow* (Montgomery Co. 1957), 104 Ohio App. 157.

*Saslow* involved a provision in a separation agreement subsequently incorporated into a divorce decree, which allowed the wife to retain title to certain real property. It was provided, however, that in the event that she remarried within three years of the entry of the divorce decree she would convey a one-third interest in the property to a trustee, for each of her two children.

When the property was sold and the wife remarried before the three years had elapsed, the former husband instituted contempt proceedings in an attempt to enforce the decree. The trial court found the wife in contempt. The Court of Appeals reversed and remanded.

The appellate court characterized the above provision as a property settlement, and ruled that such provision had lost its contractual character and became a part of the lower court's decree upon its incorporation therein.

However, the court concluded that contempt would not lie because the trial court had continuing jurisdiction only over the alimony provisions of the decree, and having no continuing jurisdiction over the property settlement provision, the court was unable to enforce this portion of the order by its contempt power.

The logic of *Saslow, supra,* was rejected by the Court of Appeals for Cuyahoga County in *Hogan* v. *Hogan* (1972), 29 Ohio App. 2d 69, wherein the court held that although provisions found in a separation agreement which was incorporated into a divorce decree may happen to have the attributes of a property settlement, such provisions were not rendered unenforceable by proceedings in contempt. pursuant to R. C. 2705.02.

The appellate court, in *Hogan.* at page 70, appropriately stated:

"* * *·To require a trial court to distinguish between those terms which may be in the nature of a property settlement and terms which relate to maintenance and support of the spouse or children enforcing only the latter, would be arbitrary and artificial and would run counter to the settled law of this state."

The court, in *Hogan*, at page 71, stated further:

"The contemnor is punished for his willful failure to comply with a valid judicial order. In such a case power of contempt is not dependent upon the presence or absence of continuing jurisdiction over the subject matter and parties to the original divorce action. It springs separately, from the act or omission in defiance of the court and from the actual arrest, if no more, of the contemnor. The presence or absence of jurisdiction is not a basis, therefore, for an abstract distinction between punishment for refusal to make payments for maintenance and support and punishment for refusal to make payments to effect a property settlement, in each case an order by the court. In either event, defiance of a valid judicial order should be equally enforceable by proceedings to punish as for a contempt, subject in each case to the same defenses."

We are in agreement with the Court of Appeals for Cuyahoga County that to rest the enforceability of a trial court's order on the determination of whether the terms of the agreement embodied within the decree are labeled, or are in the nature of, a property settlement, or labeled, or are in the nature of, maintenance and support, would be arbitrary and artificial.

In the first instance, the power of contempt is inherent in a court. *Hale* v. *State* (1896), 55 Ohio St. 210; *State, ex rel. Turner,* v. *Albin* (1928), 118 Ohio St. 527. Even were this not so, R. C. 2705.02 expressly vests such power in the courts. Such section, in pertinent part, provides:

"A person guilty of any of the following acts may be punished as for a contempt:

"(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer; * * *."

The concept that the terms of a contract between the parties in a domestic relations action are raised to the status of being a part of the court's judgment when made part of the decree is found in *Holloway* v. *Holloway* (1935), 130 Ohio St. 214. The syllabus in *Holloway* clearly sets forth

the basic legal principle that "[c]ontempt proceedings lie against a husband for failure to pay alimony as provided in a separation agreement which is incorporated into and made a part of a divorce decree."

The court, in its opinion, at page 216, in speaking of the elevation of the terms of the contract to the status of the decree, stated:

"* * * A decree which incorporates an agreement is a decree of court nevertheless, and as soon as incorporated into the decree the separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such."

The court in *Holloway* pointed out that marriage being a social institution in which society at large has a vital interest, the agreements between the parties setting forth their obligations one to the other at the time of a divorce proceeding is not in the nature of a business transaction or a matter of commerce. In this regard the court stated the following at page 216 of the opinion:

"A decree granting divorce and awarding alimony is an order of court in the enforcement of which the public has a vital interest. An alimony obligor is not exempt from the operation of the decree by reason of the separation agreement. To hold otherwise would be to reduce the status of a divorce and alimony decree to that of a commercial transaction. Marriage, however, is not a matter of commerce, nor is it merely a contract between the parties. Marriage is a basic social institution of the highest type and importance, in which society at large has a vital interest.

"Where a court, in its divorce decree, adopts the language of a separation agreement, it does not thereby reduce the status of the decree to that of a mere contract. While a contract may become a decree of court, a decree of court can not assume the status of a mere contract. The right to alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and

legal duty of the husband to support his wife. It is the law rather than contract which imposes this obligation upon the husband."

The reasoning of the court as set forth in *Holloway* upholding the right of contempt proceedings where a party has failed to comply with the court's decree respecting alimony payments should reasonably apply as well to a failure to comply with a court's decree embodying property settlement agreements.

For purposes of the enforcement of the court's decree, the public interest would reasonably require that property settlement provisions incorporated within the decree be treated as a determination of a portion of the rights and obligations of the marital couple one to the other. Further, it is reasonable that the equitable division of the accumulations of the parties, as a result of their joint efforts and joint economies, be enforced in the same manner as would be the alimony provision set forth in the decree.

Therefore, we hold that a property settlement provision contained in a separation agreement, which is subsequently incorporated into a divorce decree, or a decree of dissolution, is enforceable by contempt proceedings.

The second prong of appellant's argument is that his incarceration for refusal to pay according to the terms of the property settlement would in effect violate Section 15, Article I of the Constitution of Ohio, which forbids imprisonment for debt.

As stated previously, this court has held that one may be found in contempt for nonpayment of alimony ordered by the court. Within these prior decisions it has been specifically held that "alimony" does not constitute a "debt" within the meaning of the constitutional proscription. *State, on Complaint of Cook,* v. *Cook* (1902), 66 Ohio St. 566; *Holloway* v. *Holloway, supra.* This is true whether the alimony is temporary or permanent, or whether awarded in gross or to be paid in installments, *State, on Complaint of Cook, supra,* at page 573.

An investigation of the law on this subject in other jurisdictions reveals that the majority distinguish between

alimony, which is enforceable in contempt and not considered a debt, and a property settlement, which is not so enforceable. See, e. g., *Goggans* v. *Osborn* (C. A. 9, 1956), 237 F. 2d 186, 189; *Dickey* v. *Dickey* (1928), 154 Md. 675, 681, 141 A. 387; see, also, *Thomas* v. *Thomas* (1953), 337 Mich. 510, 60 N. W. 2d 331. Some jurisdictions will enforce a property settlement by contempt proceedings if it requires a conveyance of the *res*, but not if it requires the payment of money. See, e. g., *Proffit* v. *Proffit* (1969), 105 Ariz. 222, 224, 462 P. 2d 391.

However, it would appear that a growing number of states will enforce decretal property settlement provisions by contempt proceedings and consider such enforcement constitutionally sound. See, e. g., *Harvey* v. *Harvey* (1963), 153 Colo. 15, 19, 384 P. 2d 265; and *Decker* v. *Decker* (1958), 52 Wash. 2d 456, 326 P. 2d 332; see, also, *Oaks* v. *Oaks* (1944), 207 Ark. 902, 183 S. W. 2d 292, and *Duke* v. *Smith* (1978), 242 Ga. 207, 248 S. E. 2d 617.

We find this line of cases allowing contempt proceedings for the enforcement of decretal property settlement provisions to be the better view.

As stated by the court in *Holloway, supra*, at page 217, in reference to an agreement for alimony within a separation agreement embodied in a decree: "* * * However, an alimony award is not a money judgment; nor is it in the nature of a business debt. Though it is an obligation imposed upon the husband; it is not such as may be characterized as a 'debt' within the prohibition against imprisonment for debt. * * *

"A distinction may be drawn between ordinary judgments and an order for the payment of alimony. 'An ordinary judgment at law does not order the defendant to pay anything. It simply adjudicates the amount owing from defendant to plaintiff and remits the plaintiff to his ordinary remedies by execution or otherwise to enforce payment. On the other hand, an order to pay alimony *pendente lite*, though partaking also, of the nature of a judgment * * *, goes further, and is a direct command of the

court to the defendant to pay the sums therein mentioned. This command it has been the practice of courts from time immemorial to enforce by proceedings for contempt; * * * "

We hold that this reasoning is equally applicable to decrees embodying property settlements. The decree of the court is a command of the court to a party to make certain payments, or convey or transfer certain property. Such command or order of the court in reference to certain property of the parties should be enforceable by way of the statutory power of contempt.

The public has a strong interest in ensuring that the termination of the marital relationship results in an equitable settlement between the parties. That intended result is the very purpose of requiring court approval of a separation agreement before a decree of divorce or dissolution is rendered. For purposes of enforcement, both the alimony and property settlement provisions of the decree are orders of the court, and represent more than a debt of one spouse to the other.

Therefore we hold that for purposes of enforcing a decree entered in a domestic relations proceeding, provisions relating to the division of property as contained within a separation agreement do not constitute a "debt" within the meaning of that term as used in constitutional inhibition against imprisonment for debt.

On the basis of all of the foregoing, the judgment of the Court of Appeals is hereby affirmed.

*Judgment affirmed.*

HERBERT, W. BROWN, SWEENEY and LOCHER, JJ., concur.

CELEBREZZE, C. J., and P. BROWN, J., dissent.

CELEBREZZE, C. J., dissenting. In the present appeal we have not been called upon to review a prior factual determination that a particular provision is alimony or was

intended to come within separate provisions dealing with alimony or child support. Nor does the issue concern whether a provision for alimony, expressed in the *form* of a property settlement, is enforceable by contempt proceedings.

The controversy to be resolved is whether the failure to comply with two "property settlement" provisions,[1] clearly separable from and unrelated to distinct requirements for alimony and child support,[2] are subject to enforcement in a contempt proceeding resulting in an incarceration order.

I agree with Judge Day's discussion and conclusion that "Marriage is a basic social institution of the highest type and importance, in which society at large has a vital interest." *Holloway* v. *Holloway* (1935), 130 Ohio St. 214,

---

[1] The obligation to pay off the 1973 Buick is evident from the language recited by the majority in its quotation taken from paragraph No. 3 of the agreement. However, to fully understand the import of the $60,000 promissory note, reference to other provisions of the separation agreement becomes necessary. Paragraph No. 3 thereof indicates that certain real estate will remain in the wife's name until all indebtedness on it is paid and indicates the following:

"It is also agreed that the property described on the Land Contract, which is the document evidencing the purchase of said properties from G. A. and Vernah Gardner shall remain in the name of said wife until such time as all indebtedness between the parties created herein is paid in full."

Furthermore, paragraph No. 6 reveals that the property mentioned in paragraph No. 3 "shall serve as collateral for the payment of the $60,000.00 note executed on the date hereof. Upon the payment of said note in full, said Wife agrees to convey said real estate by proper deed to said Husband."

[2] The provision outlining appellant's obligation to pay child support and alimony is found in paragraph No. 4 of the separation agreement, which reads as follows:

"Until such time as the minor child Jerry attains the age of 18 years, or graduates from high school, whichever is later, Husband shall pay to Wife the sum of *$25.00 per week as support for said minor child,* said payments to be made directly to said Wife and to be made by check so that a permanent record will be established thereby. In addition, said Husband shall pay to said Wife the sum of *$75.00 per week as alimony,* said $75.00 per week payments to continue until the death or remarriage of said Wife." (Emphasis added.)

216. Furthermore, I do not challenge the proposition that provisions for alimony can be expressed in the form of money or a property settlement. I do not dispute the fact that established precedent in this state permits the use of contempt proceedings to enforce those clauses when they have been incorporated into a judicial decree. However, I am not convinced that the rationale for imposing such a severe remedy when alimony is involved can be so easily extended to the other provisions of an incorporated agreement.

The editor of the annotation in 154 A. L. R. 443, 468, has indicated that the majority view on the issue of whether a mere property settlement is enforceable by way of contempt disapproves of such a rule:

"While that general question is not within the scope of this annotation, it can be said that the more generally prevailing rule is that decrees requiring compliance with a *property settlement* are *not* enforceable by contempt proceedings, at least in so far as they call for the making of payments which are *not deemed to be alimony or support*." (Emphasis added.) See, e. g., *Corrigeux* v. *Corrigeux* (1950), 37 Wash. 2d 403, 224 P. 2d 343; *Stone* v. *Stidham* (1964), 96 Ariz. 235, 393 P. 2d 923; *Belting* v. *Wayne Circuit Judge* (1928), 245 Mich. 111, 222 N. W. 137; *Winter* v. *Winter* (1935), 270 Mich. 707, 260 N. W. 97; *Dickey* v. *Dickey* (1928), 154 Md. 675, 141 A. 387; *Bushman* v. *Bushman* (1929), 157 Md. 166, 145 A. 488; *Lemmons* v. *Lemmons* (1951), 205 Okla. 485, 238 P. 2d 790; *Goggans* v. *Osborn* (C. A. 9, 1956), 237 F. 2d 186, 189. See, also, 1 Nelson, Divorce and Annulment 537, Section 13.53; Statsky, Domestic Relations 268.

The obligation to pay alimony and support one's offspring is not just the concern of the immediate parties involved, but that of society in general. As noted by the Court of Appeals in *Goggans, supra*, at page 189:

"The community as a whole is vitally concerned that families shall not be left destitute by irresponsible husbands or fathers."

The degree of that public concern is evidenced by the

fact that incarceration for the failure to live up to one's obligation for the payment of alimony is beyond the constitutional prohibition of this state against imprisonment for debt. *State, on Complaint of Cook,* v. *Cook* (1902), 66 Ohio St. 566.

However, there may be clauses in an incorporated agreement, encompassed by the phrase "property settlement," which are not so "public in nature" that as severe a remedy as contempt and imprisonment is justified to ensure their enforcement. The syllabus in this decision makes no distinction in that regard.

Although I agree with the majority's conclusion that "[t]he public has a strong interest in ensuring that the termination of the marital relationship results in an equitable settlement between the parties," I do not feel that "interest" is furthered by *imprisoning* a former spouse for failing to adhere to each and every proviso that may be classified as being in the nature of a "property settlement."

Nor are the parties without a judicial remedy for noncompliance since there is nothing to preclude them from reducing their obligations to judgment and proceeding via execution.[3] Likewise, recognizing alternative modes of obtaining relief, in lieu of invoking the contempt power, will in no way infringe upon the power and dignity of the judiciary.

Finally, I am not convinced that incarceration for a failure to adhere to a particular property settlement provision, permissible under the broad language of the syllabus in this decision, would not, in a particular instance, violate Section 15, Article I of the Ohio Constitution, which

---

[3] The record reflects that the appellant did not attempt to totally ignore his obligations under the agreement. At the hearing on the contempt citation on February 4, 1977, appellant testified that although he was delinquent on the indebtedness on the Buick, he had made arrangements with the loan company to extend the payments and to ensure there was no repossession or foreclosures of the automobile loan.

The record also shows that appellant had offered to transfer his equity in the property known as the Gardner property and referred to in paragraph No. 3 of the agreement in settlement of the obligation on the promissory note set forth in paragraph No. 5 of the agreement.

prohibits imprisonment for debt. As in all instances when we are dealing with a constitutional right designed to safeguard the liberty of the person, all reasonable doubts should be resolved in favor of such liberty.

For all the foregoing reasons, I must respectfully dissent from the precedent that will be established by the majority opinion and the judgment rendered herein.

P. BROWN, J., concurs in the foregoing dissenting opinion.