James Alfred YEAGER, Appellant,

v.

Betty Jean YEAGER, Respondent.

STATE of Missouri, ex rel. Betty Jean YEAGER, Plaintiff,

v.

Honorable James H. KELLY, Judge of the Circuit Court of St. Francois County, Associate Division IV, Defendant.

Nos. 43050, 44033.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 4, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied Nov. 10, 1981.

James J. Knappenberger, Clayton, for appellant.

Eric C. Harris, Flat River, for respondent.

PUDLOWSKI, Presiding Judge.

This is the fourth time in the last eighteen months in which the parties have appeared before this court. This court has consolidated the husband's appeal with an original proceeding in mandamus which was subsequently filed.

Betty Jean Yeager (wife) and James Alfred Yeager (husband) were granted a dissolution of their marriage on November 20, 1979. Pursuant to the dissolution decree, the "Murphy Farm" was awarded to the husband and the "Ryan Farm" was awarded to the wife. Both farms were encumbered by a single mortgage to the Federal Land Bank in the amount of $87,-400. Husband appealed the dissolution de-

cree and we affirmed that decree on December 30, 1980.[1]

On May 28, 1980, the trial court found husband in contempt for failure to comply with its decree which ordered him to pay his proportionate share of the mortgage indebtedness.[2] He paid the amount due and then filed his notice of appeal which is now before us. In the meantime another annual installment came due on January 1, 1981 which husband again failed to pay.

Subsequently, on January 27, 1981, wife filed her second motion to enforce the dissolution decree against her former spouse. Count I recited that husband had failed to pay his 42% proportionate share of the mortgage indebtedness to the Federal Land Bank in the amount of $3,812.98 and prayed *inter alia*, for an order holding husband in civil contempt. She further alleged that the Federal Land Bank had threatened to commence foreclosure proceedings. Husband filed a motion to dismiss Count I and on February 13, 1981, the trial court contrary to its previous contempt ruling sustained husband's motion to dismiss for the reason that "said relief requested is prohibited by Article I, Section 11 of the Missouri Constitution of 1945[3] and Section 511.340 RSMo."[4] In dismissing Count I, the court expressly made no finding with respect to the factual allegations of Count I. Wife filed a petition for a writ of mandamus in this court requesting that we issue a writ to compel the defendant judge to "exercise his jurisdiction . . . and thereby consider her motion on the merits." We issued our preliminary order and consolidated it with husband's appeal from the previous year's judgment holding him in contempt. In his appeal, husband raises as one of his points the power of the court to hold him in contempt for failure to make the payments

required under the decree. We will address the mandamus question initially and concurrently determine the husband's first point on appeal. Husband's other points on appeal will be addressed thereafter.

■ Mandamus is one of the most powerful writs a court can issue. *State ex rel. Scott v. Sanders*, 560 S.W.2d 899 (Mo.App. 1978). It will not be issued if there is another adequate ordinary remedy. *State ex rel. Keystone Laundry & Dry Cleaning, Inc. v. McDonnell*, 426 S.W.2d 11 (Mo. 1968). Here, the bank threatens to foreclose on wife's farm and thus she will be adversely prejudiced by the time an appeal is prosecuted and therefore she has no adequate ordinary remedy.

■ We further recognize that mandamus is not available to compel a trial court to decide a discretionary matter, to perform a discretionary act or to direct a trial court as to how it should exercise his discretion. *State ex rel. Seidl v. Jefferson County Board of Education*, 548 S.W.2d 853 (Mo. App.1977). However, where the trial judge refuses to make a decision or to exercise his discretion mandamus will lie. *State ex rel. Vaughn v. Morgett*, 526 S.W.2d 434 (Mo. App.1975). Further, it has long been the rule in Missouri that when, upon a preliminary question of jurisdiction depending wholly upon the law and not the facts, a court misconceives its jurisdiction and refuses to proceed to a determination upon the merits, the appellate court will issue its writ of mandamus to compel the lower court to reinstate the matter. *State ex rel. Nesbit v. Lasky*, 546 S.W.2d 51, 54 (Mo.App. 1977). Here, the trial judge has stated he refuses to hear evidence and exercise his discretion based upon his belief that he has no power to find petitioner in contempt

---

1. *Yeager v. Yeager*, 612 S.W.2d 383 (Mo.App. 1980).

2. From the contempt order, the husband applied for a writ of prohibition which was denied by this court on May 28, 1980.

3. "That no person shall be imprisoned for debt, except for nonpayment of fines and penalties imposed by law."

4. "When a judgment requires the performance of any other act than the payment of money a certified copy of the judgment may be served upon the party against whom it is given and his obedience thereto required. If he neglects or refuses he may be punished by the court as for a contempt, by fine or imprisonment. . . . "

because of constitutional and statutory prohibition against such remedy. For the reasons stated hereafter we make our preliminary order peremptory.

We initially note that in the dissolution decree, the trial court found that:

> ... petitioner's earning capacity to be superior to that of respondent's and find that respondent would require maintenance from petitioner if respondent were not awarded the family home and the poultry operation on said "Ryan Farm" to reduce living expenses and produce additional income.

In *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567 (Mo. banc 1976) the Supreme Court expressly overruled a long line of previous cases and held that maintenance and child support awards have a special status and may be enforced by contempt proceedings despite the constitutional prohibition in Article I, Section 11 against imprisonment for debt. In *McClerran v. McClerran*, 562 S.W.2d 710 (Mo.App.1978), the Kansas City Court of Appeals held that the failure to transfer personal property pursuant to a dissolution decree can be punished through contempt proceedings. However, our review of Missouri law reveals no case which expressly reaches the issue as to whether an order for payment of money as part of a property settlement in a dissolution contest to a third party is enforceable by contempt proceedings. We therefore look to our sister states for guidance.

We acknowledge that there is a division of authority in our sister states as to whether failure to make payments pursuant to a property provision of a decree is enforceable through contempt. *Gross v. Gross*, 557 S.W.2d 448 (Mo.App.1977). However, we feel that the better view is that such failure is enforceable in that manner. *Harvey v. Harvey*, 153 Colo. 15, 384 P.2d 265 (1963); *Decker v. Decker*, 326 P.2d 332 (Wash. 1958); 24 Am.Jur.2d Divorce, § 944, p. 1078. An examination of *State ex rel. Stanhope v.*

*Pratt, supra,* reveals that there is no reason contumacious behavior by a party in refusing to make the mortgage payments in dispute should be treated differently than failure to pay alimony or child support awards.

In *Stanhope*, the court relied heavily upon *Ex Parte Phillips*, 43 Nev. 368, 187 P. 311 (1920) and quoted extensively with approval therefrom. *Phillips* held that:

> A debt in the sense used in the Constitution alludes to an obligation growing out of a business transaction, and not to an obligation arising from the existence of the marital status .... It is a mere allowance for support and maintenance—a duty growing out of the marriage status; a duty which sound public policy sanctions to compel one who is able so to do, possibly as a result of the co-operation (during coverture) of his former wife, to prevent such former wife from becoming a public charge or dependent upon the charity of relatives or friends ... the Constitution prohibits imprisonment for debt. But it is uniformly held, and such is the [true] doctrine, that the decree is an order of the court to the husband, compelling him to support his wife by paying certain sums, and thus perform a public as well as a marital duty. Such a decree is something more than an ordinary debt or judgment for money. It is a personal order to the husband, similar to an order of the court to one of the officers or to his attorney. The imprisonment is not alone to enforce the payment of money, but to punish the disobedience of the party; and the order is not, therefore, a debt, within the meaning of the Constitution. Nelson Div. & Sep. § 939.

In the case at bar, the judge in its original dissolution decree refused to award wife maintenance precisely because he was awarding her the poultry operation[5] and

---

5. We note that the recalcitrant husband has also interfered with the poultry operations. In Count II of her motion for contempt, wife alleged that husband intentionally and maliciously removed the personal property, equipment

and fixtures utilized in the poultry operation from the Ryan Farm. On February 6, 1981, husband was found in contempt for failure to return the property. *McClerran v. McClerran,* 562 S.W.2d 71 (Mo.App.1978). He filed a su-

the marital home on the Ryan Farm from which she could support herself. Thus, the payments required to the Land Bank by husband are in the words of the *Phillips'* court only an indirect method to compel the husband to support his wife and perform a "public as well as a marital duty." In 1973, the state legislature chose to explicitly grant for the first time to the trial courts the power to divide the marital property. § 452.330.1. It is incumbent that the court be granted the authority to enforce all aspects of its decree not just those affecting maintenance and child support. This case clearly demonstrates the interrelated nature of property division and maintenance provisions of a decree and the problems that are created if contempt is not an available remedy.

 Civil contempt proceedings are generally held to be remedial in nature. Civil contempt is for the protection of a party to the litigation, the party for whose benefit the order, judgment or decree was entered. Its function is to provide a coercive means to compel the other party to the litigation to comply with relief granted to his adversary. *Teefy v. Teefy*, 533 S.W.2d 563 (Mo. banc 1976). Where a party is guilty of wilful disobedience, or obstinacy to an order of the court, the court is empowered to punish for contempt and sentence him to imprisonment until the money is paid. *State ex rel. Stanhope v. Pratt, supra.* We hold that a spouse's conscious failure to make mortgage payments pursuant to the property provisions of a decree should be enforced in the same manner as failure to make maintenance or support payments.[6]

Consequently, defendant is vested with jurisdiction to entertain Count I of wife's motion for contempt. This court emphasizes that such a conclusion in no way transgresses upon defendant's discretionary power to hold husband in contempt. Such is a matter for defendant alone to determine and this court has no right or authority to dictate how defendant shall exercise his discretion. *State ex rel. Vaughn v. Morgett*, 526 S.W.2d 434 (Mo.App.1975).

Husband in his answer also raises three additional issues regarding the propriety of the trial court's action. However, we choose not to prematurely decide any of these points, until the trial court has had an opportunity to rule upon them.

 Husband's appeal from that part of the May, 1980 order adjudging him in contempt is moot. An appellate court will not review contempt proceedings where the contemnor has complied with the order or has purged himself. 17 C.J.S. Contempt § 124(1), p. 331; *Campbell v. Campbell*, 198 Kan. 192, 422 P.2d 941 (1967); *McDonald v. McDonald*, 233 Ga. 660, 212 S.E.2d 830 (1975). Here, the husband paid the amount due to the Federal Land Bank and thus purged himself of contempt. Husband also appeals from that part of the same decree ordering him to pay maintenance on appeal and attorney's fees. The trial court has authority to assess attorney's fees in civil contempt cases for wilful disobedience of a court order. It is a matter within the discretion of the court. *In re Marriage of Morriss*, 573 S.W.2d 101 (Mo.App.1978). We find no abuse of discretion here. However, that part of the decree providing for the payment of maintenance on appeal is reversed. The court knows of no authority and has been cited to none by the wife, which would allow the court to grant temporary maintenance in these circumstances.

The preliminary order in mandamus is hereby made peremptory and defendant is ordered to reinstate Count I of plaintiff's

---

persedeas bond and has appealed from that order.

**6.** "Before ordering imprisonment trial courts should be convinced that the person was and is financially able to make the required payment or that he has intentionally and contumaciously placed himself in a position so that he could not

comply with the court's orders. Also, we think the trial courts, in the exercise of a sound discretion, may require that the party seeking the contempt order make reasonable efforts to collect by the conventional remedies available before entering the contempt order." *Stanhope v. Pratt* at 575.

motion. The appeal is affirmed in part and reversed in part.

GUNN and REINHARD, JJ., concur.