**Dennis R. DeKLOTZ, Plaintiff-Petitioner,**

v.

**Robert FORD, Judge of the Sixth Judicial District of Iowa, Defendant-Respondent.**

**No. 2–67955.**

Court of Appeals of Iowa.

Nov. 29, 1982.

R.M. Fassler, Cedar Rapids, for plaintiff-petitioner.

John K. Fischer, Vinton, for defendant-respondent.

JOHNSON, Judge.

Petitioner, Dennis DeKlotz, challenges trial court's order finding him in contempt of court for failure to pay a debt owed to a third person pursuant to the decree dissolving his marriage. Petitioner asserts that the order constitutes an unconstitutional imprisonment for a civil debt and that the order was vague. We sustain the writ. We find it unnecessary to address petitioner's constitutional argument since we dispose of the issue on other grounds.

The petitioner's marriage was dissolved by decree on November 23, 1971. In determining the parties' respective obligations for jointly incurred debts, the decretal court ordered petitioner to pay a debt of $4,000 to his former wife's mother. No formal judgment against petitioner was recorded for the $4,000, nor did petitioner ever satisfy the debt. On December 23, 1981, a show cause order was issued by the district court requesting petitioner to demonstrate cause why he should not be held in contempt of court for failing to pay his former mother-in-law the $4,000. On January 15, 1982, respondent, Judge Ford, adjudged petitioner to be in contempt of court. Mittimus was withheld for thirty days during which time petitioner could purge himself by paying the $4,000 debt. Petitioner's failure to purge himself would result in his confinement in the county jail for thirty days.

From this order petitioner sought and was granted a writ of certiorari. All matters were stayed during the pendency of the certiorari action.

**I. Scope of Review.** In the present action defendant has petitioned the court for a writ of certiorari. "Certiorari lies when an inferior court is alleged to have exceeded its jurisdiction or to have acted illegally." *State v. West,* 320 N.W.2d 570, 573 (Iowa 1982). When reviewing a challenge to a contempt judgment, we do not examine the evidence de novo, but only to "assure the appellate court that proof of contempt is clear and satisfactory, for if there is not substantial support for the findings of the inferior court, then it acted illegally." *Rausch v. Rausch,* 314 N.W.2d 172, 174 (Iowa App.1981).

**II. Imprisonment for Debt.** Petitioner argues that a property settlement provision

of a dissolution decree which provides that petitioner pay a marital debt owed to a third party is not enforceable by a contempt proceeding. He claims that granting the remedy of contempt for a provision unrelated to support of the former spouse or child permits imprisonment for a civil debt in contravention of Iowa Constitution, art. I, § 19.

Article I, § 19 provides: "No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in case of fraud; and no person shall be imprisoned for a militia fine in time of peace." In construing this section, the court has examined the use of contempt in the domestic relations context. The court found that statutory provisions authorizing contempt for willful refusal to pay an alimony award, is not violative of Iowa Const., art. I, § 19, since alimony is not a "debt" within the meaning of the constitutional provision. See Mason v. District Court of Black Hawk County, 209 Iowa 774, 775, 229 N.W. 168, 169 (1930). This holding was consistent with the prevailing construction of the analogous constitutional provisions in other states. Id. See also Note, Execution Against the Body of the Judgment Debtor, 42 Iowa L.Rev. 306, 309, n. 26 (1957).

Parallel to the holding in Mason, the court has held that the construction of Article I, § 19 and its underlying policy justifications for exempting alimony from "debt" applies as well to child support. See Roach v. Oliver, 215 Iowa 800, 244 N.W. 899 (1932). See also, Note, Enforcement of Award of Alimony or Child Support by Contempt Proceeding, 18 Iowa L.Rev. 64, 66 (1932).

In McNabb v. Osmundson, 315 N.W.2d 9 (Iowa 1982), a case involving an application for contempt for a father's failure to pay child support, the court stated that an application for contempt of this nature is governed by section 598.23. Id. at 11. The court rejected the traditional civil/criminal distinction in contempt proceedings and concluded that "[t]he pertinent language of section 598.23 . . . is primarily punitive and only indirectly coercive, particularly viewed in light of . . . section 598.22." Id. at 15 (overruling any language to the contrary in Harkins v. Harkins, 256 Iowa 207, 127 N.W.2d 87 (1964)).

Section 598.22 (1981) sets forth the method of payment for support payments. It also provides, in part:

If the sums ordered to be paid in a support payment order are not paid to the clerk at the time provided in the order of judgment, the clerk shall certify a default to the court which may, on its own motion, proceed as provided in section 598.-23.

Prompt payment of sums required to be paid under sections 598.11 [temporary support orders] and 598.21 [permanent orders] shall be the essence of such orders or judgments and the court may act pursuant to section 598.23 regardless of whether the amounts in default are paid prior to the contempt hearing.

Section 598.23 states:

[i]f any party against whom any . . . final decree has been entered shall willfully disobey the same, or secrete his property, he may be cited for contempt and be committed to the county jail for a period of time not to exceed thirty days for each offense.

At this point we must determine whether the general language of section 598.23 ("any temporary order" or "final decree") extends beyond support orders to all provisions of a dissolution decree. After examination of the statutory scheme of chapter 598, as reflected in sections 598.-22, .23, and .24,[1] we conclude that these sections provide the remedy of contempt for

---

1. Iowa Code § 598.24 (1981) provides:

598.24 Contempt proceedings initiated by interested party—costs taxable to party in default. Nothing in this chapter shall prohibit the party entitled to support payments, or an interested party from initiating contempt proceedings on his own motion. If the de-

faulting party is found to be in contempt, the costs of such proceedings, including attorney's fees for the party initiating the proceedings in an amount deemed reasonable by the court, shall be taxed against such party. (emphasis supplied).

enforcement of orders or judgments relating to temporary or permanent support payments.

Enforcement of other provisions of a decree is governed by Iowa Code § 626.1 (1981), which provides:

626.1 Enforcement of judgments and orders. Judgments or orders requiring the payment of money, or the delivery of the possession of property, are to be enforced by execution. Obedience to those requiring the performance of any other act is to be covered by attachment as for a contempt.

■ Since the case before us clearly involves the payment of money, we believe the proper standard for determining the appropriateness of contempt as a remedy is whether the particular provision has a reasonable relationship to support of the spouse or child.

In characterizing an assignment of debt, the Iowa Supreme Court has stated the following:

[W]e reason that adjudicating property rights in a dissolution action inextricably involves a division between the parties of both their marital assets and liabilities. Expressed in broader terms, the dissolution decree must necessarily provide which party shall receive particular items of personal or real property and it must likewise assign responsibility for the satisfaction of enumerated debts to one or both of the parties. The allocation of marital debts between the parties is as integral a part of the property division as is the apportionment of marital assets. We therefore conclude that the allocation of marital debts inheres in the property division.

*In re Marriage of Johnson,* 299 N.W.2d 466, 467 (Iowa 1980).

The particular label, whether "alimony" or "property division," however, is not conclusive. "It is the substance not the form which is controlling. [citations omitted]." *In re Marriage of Woodward,* 229 N.W.2d 274, 278 (Iowa 1975). Nevertheless, each has a distinct meaning.

The term "alimony" usually and technically means an allowance for wife support and is distinguishable from property settlement and child support. But it has been said that "in a broader sense it covers an award made for the support of minor children" and "is used in some instances to designate the amount allowed the divorced wife in settlement of property rights." ... [citing authority.] *Brin v. Brin,* 240 Iowa 659, 661, 37 N.W.2d 261, 262.

. * * * * * *

Division of property has for its basis the wife's right to a just and equitable share of that property which has been accumulated by the parties as the result of their joint efforts during the years of the marriage to serve their mutual needs.... [citing authority] [*Knipfer v. Knipfer,* 259 Iowa 347, 353, 144 N.W.2d 140, 143 (1966)].

Since we conclude that assignment of a debt owed to a third party as part of the property division has no reasonable relationship to support of the spouse or child, we must also conclude that the trial court had no authority to punish petitioner by contempt. Accordingly, we sustain the writ.

WRIT SUSTAINED.

All judges concur except DONIELSON, J., who dissents.

DONIELSON, Justice (dissenting).

The majority announces a new interpretation of sections 598.22, .23, and .24 which limits the use of contempt "for enforcement of orders or judgments relating to temporary or permanent support payments" only when the "provision has a reasonable relationship to support of the spouse or child." I believe this interpretation is incorrect and far too limiting.

The crux of the issue we face is very similar to one over which the jurisdictions are split: whether failure to make payments pursuant to a property division provision of a dissolution decree is enforceable through contempt. *See Yeager v. Yeager,*

622 S.W.2d 339, 342 (Mo.App.1981). The rationale of these cases is applicable even though most involve an attack on such use of contempt under the constitutional prohibition against imprisonment for a debt. The court in *Harris v. Harris,* 58 Ohio St.2d 303, 309–10, 390 N.E.2d 789, 793 (1979), pointed out, "a growing number of states will enforce decretal property settlement provisions by contempt proceedings and considers such enforcement constitutionally sound." The parties to a dissolution are properly before the court when the decree embodying the property settlement is entered. The decree is a command of the court to a party to make payments, or convey certain property. The Nevada court is quoted extensively in *Yeager* in support of the proposition that a party refusing to abide by the property division provisions of the decree should be treated no differently than a party who refuses to abide by the alimony or child support provisions:

> ... the Constitution prohibits imprisonment for debt. But it is uniformly held, and such is the [true] doctrine, that the decree is an order of the court to the husband, compelling him to support his wife by paying certain sums, and thus perform a public as well as a marital duty. Such a decree is something more than an ordinary debt or judgment for money. It is a personal order to the husband, similar to an order of the court to one of the officers or to his attorney. The imprisonment is not alone to enforce the payment of money, but to punish the disobedience of the party; and the order is not, therefore, a debt, within the meaning of the Constitution.

622 S.W.2d at 342 (quoting *Ex Parte Phillips,* 43 Nev. 368, 187 P. 311 (1920)). I agree with the jurisdictions of this persuasion and believe, as did the court in *Harris,* that "such command or order of the court in reference to certain property of the parties should be enforceable by way of the statutory power of contempt." *Harris,* 58 Ohio St.2d at 311, 390 N.E.2d at 794.

The use of the contempt power in this manner ensures that the termination of the marital relationship results in an equitable and efficient settlement between the parties. It is merely one tool in the arsenal of those used to enforce judicial decrees. Nevertheless, it is the simplest, least expensive and least time consuming of those mechanisms. I would not foreclose the judge's power to employ the contempt proceeding in juxtaposition with the lien, attachment and garnishment procedures. Of course, the contempt power as well as these others must be employed with care to protect the rights of the parties. The record reveals that such care was taken in the instant case.

I also believe that there is no real necessity of delving into the question of imprisonment for a debt. The rationale of *Harris* that the contempt power is used to enforce the court order in total, vitiates the need to do so; the property division provisions are in the same legal vein as are the child support and alimony provisions which have always been held to be enforceable by use of the contempt procedure. Indeed, Justice Traynor, dissenting from the California majority view holding property division provisions not enforceable by contempt proceedings noted that:

> The majority opinion concedes that an alimony award based on the agreement of the parties is enforcible by contempt since it is sufficiently related to the statutory duty of support incident to the marriage relationship as to be outside the constitutional prohibition of imprisonment for debt. Cal. Const. art. I, § 15 Rights and duties with respect to property growing out of the marriage relationship and crystallized in a court order are likewise outside the scope of that provision. Such an order has not less a special character because it is based on an agreement of the parties than an alimony award based on such an agreement. Indeed, in some states the very theory underlying use of contempt to enforce awards of alimony is that alimony is itself an adjustment of property rights.

*Phillips v. District Court of Fifth Judicial Dist.,* 95 Idaho 404 at 407, 509 P.2d 1325 at 1328 (quoting *Bradley v. Superior Court,* 48

Cal.2d 509, 523–24, 310 P.2d 634, 643 (1957) (Traynor, J., dissenting)) (citations omitted).

In addition, there are grave practical problems which may result if we refuse to allow the trial court to use its contempt power to enforce these provisions. The parties will be forced to utilize more costly and time consuming enforcement mechanisms, which may, in turn, jeopardize their ability to vindicate their rights under the decree. For example, assume that, under the decree, A is to pay the debts of the parties, has the resources to do so but refuses. Assume further that B is sued by·a creditor and the amount is small. If B is allowed to seek enforcement through the contempt procedure, the rights are vindicated easily. Under the majority view, however, he would be forced to go through the lien, attachment and garnishment procedures involving costly, time consuming, and court clogging litigation. Indeed, if the amount is small, it may make little sense, under a cost benefit analysis, to engage in these procedures at all. Accordingly, I believe the wrong would go uncorrected in far too many instances. The majority's interpretation of chapter 598 would encourage this result.

In the instant case the parties were properly before the court when the decree was entered and the petitioner fully acknowledges the $4,000 obligation as due and owing; he did not appeal. The only question is whether contempt is an appropriate method to enforce payment of this obligation. I believe that contempt is *one* of the appropriate methods of enforcement under chapter 598. Section 598.23 specifically refers to a party against whom a final decree has been entered who may be cited for contempt if he "willfully disobey[s] the same or secrete[s] his *property*" (emphasis added). Section 598.24 refers to "the party entitled to support payments, *or an interested party*" (emphasis added). This language contemplates that the power of contempt is not to be limited to those who have been awarded spousal or child support, but is available to enforce the property division provisions as well.

I believe the majority's reliance on Iowa Code § 626.1 is misplaced. That section, found in the chapter dealing with executions, by its terms refers to "[j]udgments or orders requiring the payment of money, or the delivery of the possession of property . . . ." If the majority were correct in applying § 626.1 to dissolution decrees then, by its terms, it would also apply to payment of money like support payments; nothing omits support payments from the execution statute. I believe, however, that this section affords the party to a dissolution one other mechanism with which to enforce the decree. Indeed, chapter 626 deals more with the mechanics of execution than on the precise instances in which the remedy is available. The provisions of chapter 598 govern dissolution decrees and give the *additional* remedy of contempt. The language of those sections do not omit property division provisions and I do not believe this court can take the liberty of so interpreting them.

I stress again that we must be cognizant of the fact that support awards are often *themselves* an adjustment of property rights which have a reasonable relationship to the support of the spouse or child. I disagree with the majority's strained attempts to make a distinction to the contrary. As the court in *Harris* noted "[f]or the purpose of enforcement, both the [support] and property settlement provisions of the decree are orders of the court, and represent more than a debt of one spouse to another." *Harris,* 58 Ohio St.2d at 311, 390 N.E.2d at 794. Because I believe that, under chapter 598, contempt is one of the appropriate methods for enforcing these provisions of a dissolution decree, I respectfully dissent.